Opinion
 

 JONES, J.
 

 Appellant John Lynch appeals the trial court’s decision to sustain the demurrer filed by respondent The San Francisco Housing Authority (SFHA) without leave to amend as to Lynch’s cause of action brought under 42 United States Code section 1983 (hereafter section 1983). In this appeal, we consider whether the trial court properly concluded on demurrer that the SFHA is an arm of the state for purposes of section 1983. We conclude that such a conclusion on demurrer was improper. We therefore reverse that portion of the trial court’s judgment sustaining the demurrer to Lynch’s section 1983 claim.
 

 I. Factual and Procedural History
 

 On September 29, 1995, Lynch filed a complaint for damages in propria persona against his former employer, the SFHA. On December 26, 1995,
 
 *531
 
 after retaining counsel, Lynch filed a first amended complaint alleging five causes of action. One cause of action asserted a violation of section 1983. Lynch alleged that the SFHA, a “local public agency,” terminated him for exercising his First Amendment rights.
 

 The SFHA demurred to the first amended complaint. The SFHA argued as the sole basis for dismissal of the section 1983 claim that the SFHA is a state agency and hence outside the class of persons subject to liability under section 1983. The SFHA’s reply brief reiterated this sole ground for dismissal of the section 1983 cause of action. The court’s ruling, in pertinent part, sustained the demurrer to the section 1983 cause of action without leave to amend.
 

 Lynch later filed a second and third amended complaint containing causes of action that the trial court had dismissed with leave to amend. Ultimately, the trial court granted judgment on the pleadings without leave to amend.
 

 II. Discussion
 

 A.
 
 Standard of Review
 

 In this appeal, we review de novo the trial court’s decision sustaining the SFHA’s demurrer. (See
 
 Hernandez
 
 v.
 
 City of Pomona
 
 (1996) 49 Cal.App.4th 1492 [57 Cal.Rptr.2d 406].) In doing so, “we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed."
 
 (Id.
 
 at p. 1497.) Reversible error exists if those facts show entitlement to relief under any possible legal theory.
 
 (Ibid.)
 

 B.
 
 Section 1983 and the Eleventh Amendment
 

 Section 1983 permits suit by an injured party against “[e]very
 
 person
 
 who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .” (§ 1983, italics added.) The SFHA argues, as it did before the trial court, that it is a “state agency” and hence not a “person” subject to suit under section 1983.
 

 The SFHA’s argument relies on
 
 Will
 
 v.
 
 Michigan Dept, of State Police
 
 (1989) 491 U.S. 58 [109 S.Ct. 2304, 105 L.Ed.2d 45]
 
 (Will).
 
 In
 
 Will,
 
 the United States Supreme Court concluded that an action could not be brought under section 1983 in state court against the Michigan Department
 
 *532
 
 of State Police. (491 U.S. at pp. 70-71 [109 S.Ct. at p. 2312].) In support of its conclusion, the Supreme Court explained that the Eleventh Amendment bars suit against a state or an arm of the state in federal court “unless the State has waived its immunity [citation], or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.”
 
 (Will,
 
 at p. 66 [109 S.Ct. at pp. 2309-2310].) Congress, in passing section 1983, had not overridden the states’ Eleventh Amendment immunity. Therefore, absent the state’s consent, Eleventh Amendment immunity barred a suit against a state or arm of the state in federal court under section 1983. (491 U.S. at p. 66 [109 S.Ct. at pp. 2309-2310].)
 

 The question before the court in
 
 Will,
 
 however, concerned the potential liability under section 1983 of the state or an arm of the state sued in
 
 state
 
 court. (See
 
 Will, supra,
 
 491 U.S. at pp. 63-64 [109 S.Ct. at pp. 2308-2309].) The court explained, “ ‘Congress assigned to the federal courts a paramount role’ ” in the endeavor to remedy deprivations of civil rights.
 
 (Id.
 
 at p. 66 [109 S.Ct. at p. 2309].) “Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims” and that the Eleventh Amendment barred suit against the states and arms of the states in federal court, the court could not accept the “argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983.”
 
 (Ibid.)
 
 The court therefore concluded that states and “governmental entities that are considered ‘arms of the State’ for Eleventh Amendment purposes” are not “persons” subject to liability under section 1983 in any forum. (491 U.S. at p. 70 [109 S.Ct. at p. 2310].)
 

 Despite the language and reasoning of
 
 Will,
 
 the SFHA challenges the relevance of Eleventh Amendment analysis to our inquiry. The SFHA points to the Supreme Court’s statement in
 
 Will
 
 that the scope of the Eleventh Amendment and the scope of section 1983 are separate issues. Certainly, the two issues are not completely coextensive. An affirmative response to the inquiry whether the defendant is a state or an arm of the state for Eleventh Amendment purposes conclusively establishes that the defendant
 
 is not
 
 a “person” for purposes of section 1983. However, a negative response to that same inquiry does not necessarily establish that the defendant
 
 is
 
 a “person” for purposes of section 1983. Other issues can still arise. (See, e.g.,
 
 Hervey
 
 v.
 
 Estes
 
 (9th Cir. 1995) 65 F.3d 784, 791-792 [concluding that an intergovernmental association of law enforcement agencies did not constitute a “person” because not a separate legal entity from the law enforcement agencies that had created it].)
 

 This appeal calls upon us to determine whether at this stage of the pleadings, the trial court properly concluded that the SFHA is an arm of the
 
 *533
 
 state. The scope of the Eleventh Amendment is critical to that determination. (See
 
 Thompson
 
 v.
 
 City of Los Angeles
 
 (9th Cir. 1989) 885 F.2d 1439, 1443 [because the University of California at Los Angeles was an arm of the state under Eleventh Amendment it followed that it was not a person within meaning of section 1983].)
 

 C.
 
 The Scope of the Eleventh Amendment
 

 Concern for the state’s solvency and dignity are the twin concerns that underpin the Eleventh Amendment. (See
 
 Hess
 
 v.
 
 Port Authority Trans-Hudson Corporation
 
 (1994) 513 U.S. 30, 32 [115 S.Ct. 394, 395, 130 L.Ed.2d 245].) It follows therefore that when deciding whether an entity may invoke Eleventh Amendment immunity the court should focus on “the relationship between the State and the entity in question.” (See
 
 Regents of the University of California
 
 v.
 
 Doe
 
 (1997) 519 U.S._,_[117 S.Ct. 900, 904, 137 L.Ed.2d 55].) If “the state is the real, substantial party in interest, [it] is entitled to invoke its sovereign immunity from suit” even though the entity and not the state is the named party.
 
 (Id.
 
 at p._[117 S.Ct. at pp. 903-904]; quoting
 
 Ford Co.
 
 v.
 
 Dept, of Treasury
 
 (1945) 323 U.S. 459, 464 [65 S.Ct. 347, 350-351, 89 L.Ed. 389].)
 

 While the question of whether an entity may invoke the state’s Eleventh Amendment immunity is one of federal law, provisions of state law are indispensable elements of that federal analysis because an entity’s treatment under state law tends to illuminate the relationship between the state and the entity for purposes of the Eleventh Amendment. A uniform test for defining the class of entities that share in the state’s Eleventh Amendment immunity has not yet developed. The United States Court of Appeals for the Ninth Circuit, for example, considers five questions when resolving Eleventh Amendment issues such as the one presented here: “ ‘whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity.’ ”
 
 (Hale
 
 v.
 
 State of Ariz.
 
 (9th Cir. 1993) 993 F.2d 1387, 1399; quoting
 
 Mitchell
 
 v.
 
 Los Angeles Community College Dist.
 
 (9th Cir. 1988) 861 F.2d 198, 201.) Other circuits, however, do not limit their inquiry to these five questions, instead examining various additional factors, such as, the degree of autonomy enjoyed by the governmental entity
 
 (Christy
 
 v.
 
 Pennsylvania Turnpike Com’n
 
 (3d Cir. 1995) 54 F.3d 1140, 1144); the entity’s immunity from state taxation; the percentage of funding received from the state (ibid.); the geographic scope of the entities’ area of operation and concern
 
 (McDonald
 
 v.
 
 Board of Mississippi Levee Com’rs
 
 (5th Cir. 1987) 832 F.2d 901, 906); the independent authority,
 
 *534
 
 if any, of the entity to raise funds and the extent of state control over the entity’s fiscal affairs
 
 (Kashani
 
 v.
 
 Purdue University
 
 (7th Cir. 1987) 813 F.2d 843, 845). In our analysis, we will consider not just the five questions identified by the Ninth Circuit, but also many of these other factors that have been identified by courts throughout the federal system.
 

 D.
 
 Housing Authority of Los Angeles and Its Progeny
 

 The SFHA relies almost exclusively on our Supreme Court’s decision in
 
 Housing Authority
 
 v.
 
 City of L.A.
 
 (1952) 38 Cal.2d 853 [243 P.2d 515]
 
 (Housing Authority of Los Angeles).
 
 In that case, the city council for Los Angeles had approved the development of a low-rent housing project and entered into a cooperation agreement with the local housing authority.
 
 {Id.
 
 at p. 857.) The housing authority proceeded with efforts to develop the agreed-upon housing project.
 
 {Id.
 
 at pp. 857-858.) Sometime thereafter, the city council abandoned the project and refused to continue performance under the cooperation agreement.
 
 {Id.
 
 at p. 860.) The issues for our Supreme Court were whether the City of Los Angeles had the right to rescind the approval it had previously given to those housing projects and whether it had the power to abrogate the cooperation agreement in which it had entered with the housing authority.
 
 {Ibid.)
 
 The court concluded the city lacked the authority to take those actions.
 
 {Id.
 
 at p. 856.)
 

 In reaching that conclusion, the Supreme Court described the plaintiff housing authority as a “state agency.” (38 Cal.2d at p. 861.) The SFHA contends that the Supreme Court’s description of the plaintiff housing authority as a “state agency” in
 
 Housing Authority of Los Angeles
 
 disposes of Lynch’s appeal. We disagree.
 

 Labeling an entity as a “state agency” in one context does not compel treatment of that entity as a “state agency” in all contexts. A decision of the California Supreme Court and a decision of the Fifth District Court of Appeal illustrate this point. In
 
 The Housing Authority
 
 v.
 
 Dockweiler
 
 (1939) 14 Cal.2d 437 [94 P.2d 794]
 
 (Dockweiler),
 
 the California Supreme Court considered numerous challenges to the constitutionality of California’s Housing Authorities Law and its Housing Cooperation Law. One challenge argued that the Housing Cooperation Law authorized a city or county to make a gift or a loan of its credit in violation of the state Constitution.
 
 {Id.
 
 at p. 457.) The court rejected this challenge, explaining that “[a]ny appropriation by a city or county will be used by the authority therein established as an
 
 agency of the city or county
 
 to perform a city, county or state purpose, namely, the elimination of slums.”
 
 {Ibid.,
 
 italics added.) The decision in
 
 Dockweiler
 
 predated the decision in
 
 Housing Authority of Los Angeles
 
 and
 
 *535
 
 yet in
 
 Housing Authority of Los Angeles
 
 the California Supreme Court described the Los Angeles housing authority as a state agency not an agency of the city or county. Just as the Supreme Court in
 
 Housing Authority of Los Angeles
 
 was not bound by its previous statement made in a different context that a housing authority is an agency of the city or county, neither are we bound by its description of a housing authority as a state agency in
 
 Housing Authority of Los Angeles,
 
 if it was made in a different context.
 

 The Fifth District Court of Appeal made this very point in
 
 Torres
 
 v.
 
 Board of Commissioners
 
 (1979) 89 Cal.App.3d 545 [152 Cal.Rptr. 506]
 
 (Torres).
 
 That decision squarely considered whether the statement in
 
 Housing Authority of Los Angeles
 
 that a housing authority is a state agency compelled that court to treat a housing authority as a state agency for the purpose of the open meeting acts. The Court of Appeal concluded that it did not compel such a conclusion because “a housing authority may be a state agency for some purposes” but not for others.
 
 (Torres,
 
 at p. 549.) The
 
 Torres
 
 decision concluded that a housing authority is not subject to the meeting act applicable to state agencies. While a housing authority is a state agency for the purposes considered by the California Supreme Court in
 
 Housing Authority of Los Angeles,
 
 the
 
 Torres
 
 court concluded that a housing authority was not a state agency for the purpose of the issue before that court.
 
 (Torres,
 
 at p. 549.) Thus, a conclusion in one context that a housing authority is a state agency is not dispositive in all contexts.
 

 Moreover, we are not persuaded that identifying an entity as a state agency is synonymous with identifying that entity as an arm of the state. We acknowledge that many judicial opinions employ language suggesting the two concepts are always one and the same. (See
 
 Pennhurst State School & Hosp.
 
 v.
 
 Halderman
 
 (1984) 465 U.S. 89, 100 [104 S.Ct. 900, 908, 79 L.Ed.2d 67] [“It is clear, of course, that in the absence of consent a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.”];
 
 Franceschi
 
 v.
 
 Schwartz
 
 (9th Cir. 1995) 57 F.3d 828, 831 [“The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, a ‘arm of the state,’ its instrumentalities, or its agencies.”].) However, a recent decision of the United States Supreme Court addressing Eleventh Amendment immunity suggests that the fact that an entity is a state agency is not dispositive. Even if the entity is a “state agency,” there remains a “question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore ‘one of the United States’ within the meaning of the Eleventh Amendment.”
 
 (Regents of the University of California
 
 v.
 
 Doe, supra,
 
 519 U.S. at p--- fn. 5 [117 S.Ct. at p. 904]; see also
 
 McDonald
 
 v.
 
 Board of Mississippi Levee Com’rs, supra,
 
 832
 
 *536
 
 F.2d at pp. 906-907 [“A reference to the Levee Board as an ‘agency’ of the state by Mississippi courts does not amount to a characterization of the Levee Board as an arm of the state.”].)
 

 We consider this most recent statement a more accurate description of the consequence of applying the “state agency” label. While instructive, the label is not dispositive. In fact, at least one court has stated that even if a state statute characterizes an entity as an arm of the state that designation is also not conclusive, but instead is just a factor the court may consider.
 
 (PYCA Industries
 
 v.
 
 Harrison County Waste Mngmt.
 
 (5th Cir. 1996) 81 F.3d 1412, 1416 [discussing Eleventh Amendment immunity factors]; see also
 
 Crosby
 
 v.
 
 Hosp. Auth. of Valdosta & Lowndes County
 
 (11th Cir. 1996) 93 F.3d 1515, 1525 [concluding that entity which was treated as a part of the state for purposes of state action immunity was not an arm of the state for purposes of Eleventh Amendment immunity].) These judicial decisions, which refuse to resolve the arm-of-the-state analysis by relying on a label, perform the correct analysis: It is the relationship between the entity and the state, not the label attached to the entity, that determines whether the Eleventh Amendment would shield that entity from suit in federal court.
 

 With this in mind, we consider the context in which our Supreme Court concluded that the Housing Authority of Los Angeles was a state agency in order to determine whether that conclusion aids in our analysis here. In analyzing the issues presented in
 
 Housing Authority of Los Angeles,
 
 our Supreme Court did not consider any of the factors relevant to our Eleventh Amendment analysis which we have set out above. (See pt. II. C,
 
 ante.)
 
 Instead, the court scrutinized state law for any indication that the city’s actions were authorized.
 
 (Housing Authority of Los Angeles, supra,
 
 38 Cal.2d at pp. 861-871.) Finding none, the court concluded the city lacked the authority to abrogate its agreement with the housing authority.
 
 (Id.
 
 at p. 856.)
 

 That court’s analysis provides little or no insight into the issue we consider. Moreover, portions of the court’s reasoning, while necessary and proper for purposes of resolving the issues before it, actually conflict with Eleventh Amendment analysis, suggesting that we should
 
 not
 
 rely upon the conclusion in
 
 Housing Authority of Los Angeles
 
 for our purposes. The court in
 
 Housing Authority of Los Angeles
 
 explained that the housing authority was a “creature -. . . of . . . state legislative action,” was “vested with specific duties and powers under the Housing Authorities Law and Housing Cooperation Law to effect a state objective” and was not “functioning independently of state law.” (38 Cal.2d at pp. 861-862.) From these factors, the court described the housing authority as a state agency. While those factors were
 
 *537
 
 relevant to the issues before that court, they are of little moment in Eleventh Amendment analysis. It is well established that “cities and counties do not enjoy Eleventh Amendment immunity” even though they “ ‘exist solely at the whim and behest of their state.’ ”
 
 (Hess
 
 v.
 
 Port Authority Trans-Hudson Corporation, supra,
 
 513 U.S. at p. 47 [115 S.Ct. at p. 404].) “[U]ltimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates.”
 
 (Ibid.)
 
 The mere “ ‘exercise [of] a “slice of state power” ’ ” is not dispositive.
 
 (Id.
 
 at p. 43 [115 S.Ct. at p. 402].) Thus the court in
 
 Housing Authority of Los Angeles
 
 relied exclusively on considerations that offer little, if any, guidance in our Eleventh Amendment analysis.
 

 Several cases have cited
 
 Housing Authority of Los Angeles
 
 for the proposition that a housing authority is a state agency, but none of these cases makes that conclusion any more pertinent to our analysis. The first such case is
 
 Lockhart
 
 v.
 
 City of Bakersfield
 
 (1954) 123 Cal.App.2d 728 [267 P.2d 871]
 
 (Lockhart).
 
 The issue before that court “involved . . . whether the city may by resolution rezone a portion of the city while its ordinance rezoning the same portion of the city was suspended by referendum.”
 
 {Id.
 
 at p. 729.) The court concluded that “. . . the statute does not provide that zoning or rezoning ordinances or resolutions adopted pursuant to the state housing laws are subject to the referendum provisions of the city charter and such provisions are therefore inapplicable.”
 
 {Id.
 
 at p. 734.)
 
 Lockhart
 
 cites
 
 Housing Authority of Los Angeles
 
 in support of its conclusion that “[t]he city of Bakersfield, acting under the provisions of the State Housing Law and the Housing Authorities Law, is an agency of the state, functioning under state law to fulfill state purposes and is not acting pursuant to its fundamental law to effect solely municipal objectives.”
 
 {Lockhart,
 
 at p. 732.)
 
 Lockhart’s
 
 reliance on
 
 Housing Authority of Los Angeles
 
 in a context quite different from the one we consider does not resolve any of the reservations that we have regarding its pertinence here.
 

 The next citation to
 
 Housing Authority of Los Angeles
 
 for its state-agency conclusion appears in a criminal case,
 
 People
 
 v.
 
 Holtzendorff
 
 (1960) 177 Cal.App.2d 788 [2 Cal.Rptr. 676]. In
 
 Holtzendorff,
 
 the People appealed the trial court’s “order granting defendant’s motion to set aside the 52 count indictment that accused him of having committed as many felonies.”
 
 (Id.
 
 at pp. 791-791.) The Court of Appeal concluded that there was “probable cause” as to 21 of the 52 counts and reversed the order as it applied to those counts. A required element of those 21 counts was a finding that “the Housing Authority of the City of Los Angeles was a public corporation.”
 
 (Id.
 
 at p. 798.) The court concluded that “[t]here is no room for doubt concerning the status of the Housing Authority of the City of Los Angeles”
 
 *538
 

 (ibid.);
 
 a housing authority is a public corporation. The court quoted the Health and Safety Code. The court also quoted the following language from
 
 Housing Authority of Los Angeles, supra,
 
 38 Cal.2d at page 861: “The housing authority was thereby created as a state agency, ‘a public body corporate and politic,’ and is not an agent of the city in which it functions.”
 
 Holtzendorjf
 
 is unhelpful for the same reasons that we have concluded the
 
 Lockhart
 
 decision is of little value to us here. Moreover,
 
 Holtzendorff
 
 provides even less assistance because it quotes
 
 Housing Authority of Los Angeles
 
 not for its “state agency” language but for its description of housing authorities as public bodies corporate and politic.
 

 A third reference to
 
 Housing Authority of Los Angeles's
 
 state-agency language appears in
 
 Housing Authority
 
 v.
 
 City Council
 
 (1962) 208 Cal.App.2d 599 [25 Cal.Rptr. 493]. The petitioners in that case were former commissioners of the Housing Authority of the City of Needles.
 
 (Id.
 
 at p. 600.) The city council removed petitioners from their offices as commissioners.
 
 (Id.
 
 at p. 601.) The petitioners filed a petition for writ of mandate commanding the city council to reinstate them as commissioners.
 
 (Ibid.)
 
 The trial court ordered the issuance of the peremptory writ of mandamus. The city council appealed the trial court’s order. The decision of the Court of Appeal focuses primarily on the city council’s contention that the writ of mandate was not appropriate and that the appropriate form of relief would be through the action of quo warranto.
 
 (Id.
 
 at p. 602.) In the midst of its discussion of cases relevant to that issue, the court cites
 
 Housing Authority of Los Angeles
 
 for the proposition that “the city council, while functioning pursuant to the Housing Authorities Law, is an agency of the state functioning under the law to fulfill state purposes.”
 
 (Id.
 
 at p. 605.) The decision contains no independent reasoning as to this conclusion and never explains the relevance of this statement to its decision. As with the previous cases, this decision does not further the discussion of whether a housing authority would be immune from suit under the Eleventh Amendment.
 

 The last in these line of cases is
 
 Housing Authority
 
 v.
 
 City of Oakland
 
 (1963) 222 Cal.App.2d 771 [35 Cal.Rptr. 527]. That case is similar to
 
 Housing Authority of Los Angeles
 
 in that the City of Oakland housing authority, like the Los Angeles housing authority, sought to compel the city in which it operated to perform acts required by a cooperation agreement between the city and the housing authority. Thus, like the Los Angeles case, the City of Oakland case focuses on the scope of appropriate behavior by the
 
 city.
 
 The case holds that “[w]hen ... the housing authority has incurred expense and has contracted for federal funds or credit in reliance upon [a] cooperation agreement [with the city,] that contract binds the city, cannot be abrogated by it, and can be modified or terminated only as
 
 *539
 
 permitted by the applicable statutes
 
 {Id.
 
 at p. 772 [citing
 
 Housing Authority of Los Angeles].)
 
 The court’s analysis includes a sentence which states, “The authority is a state agency organized under the Housing Authorities Law (Health & Saf. Code §§ 34200 et seq.).”
 
 (Id.
 
 at pp. 771-772.) This conclusion, however, is not supported by any analysis or citation, other than to the Housing Authorities Law as a whole.
 
 Housing Authority
 
 v.
 
 City of Oakland
 
 is therefore no more instructive than
 
 Housing Authority of Los Angeles.
 

 For these reasons, our Supreme Court’s statement in
 
 Housing Authority of Los Angeles
 
 that a housing authority was in the nature of a state agency does not compel a similar conclusion in the context of this case.
 

 E.
 
 Consideration of Eleventh Amendment Factors
 

 We therefore turn our attention to the considerations relevant to an Eleventh Amendment analysis. The “most salient factor” in an Eleventh Amendment determination according to many courts is concern for the state’s solvency, or more generally the vulnerability of the state’s purse. (See
 
 Hess
 
 v.
 
 Port Authority Trans-Hudson Corporation, supra,
 
 513 U.S. at p. 48 [115 S.Ct. at p. 404] [citing circuit decisions].) Because we review that portion of the judgment arising from dismissal of the section 1983 claim without leave to amend, we do not review a fully developed factual record. However, we have reviewed the Housing Authorities Law, the Housing Cooperation Law and sections of the Government Code. These statutes do not establish that the state is legally obligated to pay a judgment such as the one that Lynch seeks against the SFHA. (See
 
 Durning
 
 v.
 
 Citibank, N.A.
 
 (9th Cir. 1991) 950 F.2d 1419, 1425 fn. 3 [proper inquiry is whether entity is legally obligated to pay judgment]; cf.
 
 Regents of the University of California
 
 v.
 
 Doe, supra,
 
 519 U.S. at p._[117 S.Ct. at p. 904] [in case where state was legally liable for judgment but could seek indemnity from United States Department of Energy, the court described the question as whether entity has “potential legal liability”].)
 

 The statutes actually suggest, to the contrary, that the SFHA itself is legally liable for the judgment. For example, the Government Code distinguishes between “the state or any . . . agency of the state
 
 claims against which are paid by warrants drawn by the
 
 Controller” and a “local public entity,” which includes a “public authority.” (Gov. Code, § 970, subd. (c), italics added.) Additionally, the Health and Safety Code contemplates that creditors may seek to satisfy judgments against a housing authority (arising from “claims of any kind in tort, contract, or otherwise”) from the
 
 housing
 
 
 *540
 

 authority’s
 
 revenues or property. (See Health & Saf. Code,
 
 [1]
 
 § 34352 [providing that the lien of any pledge made to secure bonds shall be “valid and binding as against all parties” holding such claims].) Thus, the statutes do not establish as a matter of law that the state must pay any judgment in this case, a conclusion that would have supported a determination that a housing authority is an arm of the state.
 

 Moreover, we cannot say that housing authorities will never have the resources to pay judgments, a conclusion which might have circumstantially supported the notion that the state would be legally responsible to satisfy such obligations. Housing authorities have the power to generate revenues by, for example, issuing bonds and making or selling mortgage loans. (See §§ 34312.3, subd. (a)(1) & (2), 34350, subds. (a), (b), (f); see also
 
 Hess
 
 v.
 
 Port Authority Trans-Hudson Corporation, supra,
 
 513 U.S. at p. 48 [115 S.Ct. at p. 404] [ability to generate revenue and pay debts is a factor indicating entity is not an “arm of the State”].) We do not speculate as to the amount of those funds and the uses to which they may be put, but merely point out that a housing authority is not inherently without any funds.
 

 We also do not conclude on this record that allowing an action to proceed against a housing authority such as the SFHA would offend the dignity of the state, the second of the twin concerns of the Eleventh Amendment. The Health and Safety Code is replete with examples of local, rather than state, control of housing authorities. The governing body of the city or county, not the state, determines when the local housing authority may begin exercising its powers. (§§ 34240, 34240.1, 34242.) “In view of this provision of the act, it must be concluded that it is the local government body, and not the Legislature, that confers upon the authority the right to exercise its functions.”
 
 (Dockweiler, supra,
 
 14 Cal.2d at p. 463.) The local governing body also determines, subject to certain constraints, when the housing authority may cease exercising its powers (§ 34245); who shall serve as commissioners of the housing authority, (§§ 34270, 34271.5, 34290), and who should be removed from such positions (§ 34282). It is the governing body of the city or county, not the state, that must initially fund the administrative expenses of the housing authority. (§ 34520.) Furthermore, state statutes classify housing authorities as public corporations and “local public entities.” (§ 34203 [defining “authority” as public corporation]; Gov. Code, §§ 900.4 [defining “local public entity” as including “public authority”], 970, subd. (c) [same]; see
 
 Hess
 
 v.
 
 Port Authority Trans-Hudson Corporation, supra,
 
 513 U.S. 30 [state’s classification of defendant as public corporation rather than state agency is a factor indicating entity is not “arm of State”].)
 

 
 *541
 
 Nor do state statutes indicate that the SFHA is financially the alter ego of the state. (See
 
 Christy
 
 v.
 
 Pennsylvania Turnpike Com’n, supra,
 
 54 F.3d at p. 1145 [reviewing funding sources to evaluate whether entity was alter ego of state].) Housing authorities are permitted to receive funds from many sources other than the state, such as, private entities and local governments. (See §§ 34212 [source of funds for housing project can be state, city, county, district, authority, etc. and federal government], 34315.3 [housing authority can accept money from any public or private source], 34327 [may receive financial aid from state and federal government].) In fact, our state Legislature enacted the laws under which housing authorities are created in order to access
 
 federal
 
 money available under the United States Housing Act of 1937.
 
 (Housing Authority of Los Angeles, supra
 
 38 Cal.2d 853, 860.)
 

 Housing authorities admittedly address matters of concern to the state (§§ 34201, subd. (c), 34400, cl. (d)), but in doing so they function within, and are concerned with, a limited geographic area, (see §§ 34208, 34209). They are, as the Legislature has declared, “local entities” with responsibilities “within their jurisdictions.” (§34312.3, subd. (g); see
 
 McDonald
 
 v.
 
 Board of Mississippi Levee Com’rs, supra,
 
 832 F.2d at p. 906 [concluding that even though flood control was important to state, defendant was concerned with local as opposed to statewide problems because concern of defendant was maintenance of levee within its district].) This limited geographic area of operation prompted the Fifth District in
 
 Torres, supra,
 
 89 Cal.App.3d at pages 549-550, to conclude that for purposes of the open meeting acts, a housing authority is a local, not a state agency. The court reasoned that “. . . a housing authority is local in scope and character, restricted geographically in its area of operation, and does not have statewide power or jurisdiction even though it is created by, and is an agent of, the state rather than of the city or county in which it functions.”
 
 (Id.
 
 at p. 550.)
 
 [2]
 

 The autonomy of housing authorities, even from local control, is also apparent. The state Legislature has expressly authorized housing authorities to “[S]ue and be sued,” (§ 34311, subd. (a)); to take, hold, purchase, sell, dispose, insure and improve property (§ 34315, subds. (b), (c), (e), (f)); and to enter into and execute contracts (§§ 34311, subd. (d), 34314 [contract for services of third party], 34350, subd. (g) [make and execute contracts]).
 

 We acknowledge that housing authorities enjoy some powers and exemptions that other courts have found more typical of a state or an arm of the
 
 *542
 
 state. Housing authorities may acquire property by eminent domain (§§ 34315, subd. (d), 34325), and the bonds that housing authorities issue and the property they own are exempt from state taxation (§§ 34379, subd. (c), 34400, 34401, 34402). However, as to the latter criteria, we note that the California Constitution exempts from taxation the property owned and bonds issued by a “local government.” (Cal. Const., art. XIII, § 3.) Tax exemptions are therefore not a privilege exclusively of the state or its arms. In any event, on balance, these factors are not adequate to compel the conclusion at this stage of the pleadings that the SFHA is indisputably an arm of the state. (See
 
 Christy
 
 v.
 
 Pennsylvania Turnpike Com’n, supra,
 
 54 F.3d at p. 1148 [holding that, despite power of eminent domain and exemption from state taxation, “on balance” factors weighed in favor of finding defendant was not an arm of the state];
 
 Peters
 
 v.
 
 Del. River Port Authority
 
 (3d Cir. 1994) 16 F.3d 1346, 1351 [same]; cf.
 
 Skomorucha
 
 v.
 
 Wilmington Housing Authority
 
 (D.Del. 1980) 504 F.Supp. 831, 835-836 [denying request for dismissal which had argued that the Wilmington Housing Authority was a state agency and hence immune from suit under § 1983].)
 

 We therefore conclude that the SFHA has not demonstrated that Lynch has failed to plead a proper claim for relief. The trial court erred in sustaining the SFHA’s demurrer.
 

 III. Disposition
 

 We reverse the judgment as to Lynch’s 42 United States Code section 1983 cause of action. Costs on appeal to appellant.
 

 Peterson, P. J., and Haning, J., concurred.
 

 [1]
 

 All further statutory references are to the Health and Safety Code, unless otherwise indicated.
 

 [2]
 

 In
 
 Torres,
 
 the court held that the Ralph M. Brown Act (the Brown Act), not the State Act, governed the conduct of housing authority meetings.
 
 (Torres, supra,
 
 89 Cal.App.3d at pp. 550-551.) In addition to considering the limited geographic scope of housing authorities, the court in
 
 Torres
 
 also considered the “broad coverage of the Brown Act” and interpreted the phrase “municipal corporation” as it is used in the Brown Act’s definition of “local agency” as including more than a “ ‘city,’ general law or charter, but [as including] such entities as housing authorities.”
 
 (Ibid.)