TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

| | : | |
|---|---|---|
| OPINION | : | No. 15-1102 |
| | : | |
| of | : | March 17, 2020 |
| | : | |
| XAVIER BECERRA | : | |
| Attorney General | : | |
| | : | |
| ANYA M. BINSACCA | : | |
| Deputy Attorney General | : | |
| | : | |

_____

Tia Boatman Patterson, the Executive Director of the California Housing Finance Agency, has requested an opinion on the following questions of state law:

1.      Under California's Housing Authorities Law (Health & Saf. Code, § 34200 et seq.), may a local housing authority operate throughout the entire state?

2.      May a corporation or other instrumentality formed by a local housing authority exercise the statutory powers of a local housing authority throughout the entire state?

3.      May a local housing authority accept a federal grant for a housing project that is outside its territorial jurisdiction?

4.      May an out-of-state housing authority, or a corporation formed by an out-of-state housing authority, exercise the statutory powers of a housing authority in California?

1

CONCLUSIONS

1.      Under California's Housing Authorities Law (Health & Saf. Code, § 34200 et seq.), a local housing authority may not operate generally throughout the entire state; it may operate outside its defined geographic boundaries as specifically allowed or contemplated by statute.

2.      A local housing authority may not delegate a statutory power it does not have. Because a local housing authority may not operate generally throughout the entire state under state law, it may not delegate such power to a corporation or other instrumentality.

3.      State law does not allow a local housing authority to accept a federal grant for a housing project outside its territorial jurisdiction.

4.      An out-of-state housing authority, or a corporation formed by an out-of-state housing authority, may not exercise the statutory powers of a housing authority in California.

ANALYSIS

California's housing authorities have their origin in the United States Housing Act of 1937,[1] which Congress enacted to "promote the general welfare of the nation" by remedying "'the unsafe and insanitary housing conditions and the acute shortage of decent, safe and sanitary dwellings for families of low income.'"[2]  The Housing Act authorized the federal government "to make loans to public-housing agencies of the several states or their political subdivisions with a view to assisting in the development, acquisition or administration of low-rent housing or slum-clearance projects."[3]

To avail California of this federal funding,[4] and recognizing a shortage of safe, affordable housing, our Legislature enacted the state Housing Authorities Law in 1938.[5] The Legislature declared that clearing areas of unsafe and insanitary dwellings, and constructing safe and sanitary housing projects for low-income people, were "public uses

[1] 42 U.S.C. §§ 1401-1430.

[2] *Housing Authority of Los Angeles County v. Dockweiler* (1939) 14 Cal.2d 437, 441, quoting then 42 U.S.C. §1401 (similar language now in 42 U.S.C. § 1437).

[3] *Ibid.*

[4] *Id.* at p. 443.

[5] Health & Saf. Code, §§ 34200-34380 (Stats. 1938, Ex. Sess., p. 9).

2

and purposes for which public money may be spent and private property acquired and are governmental functions of state concern . . . ."[6] To address these concerns, the Housing Authorities Law created, in each county and city, a public corporation known as a housing authority, which is not authorized to operate until the governing body of the county or city declares a need for it.[7] Each housing authority is governed by an appointed board of commissioners.[8]

## 1. May a Local Housing Authority Operate Throughout the State?

Our first question is whether a housing authority created by California's Housing Authorities Law has statewide jurisdiction as a matter of state law. We begin our inquiry with the statutes that create and govern housing authorities. "Our primary task when faced with a question of statutory construction is to determine the intent of the Legislature, and we begin by looking to the statutory language."[9] In determining such intent, "[w]e must give 'the language its usual, ordinary import and accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.'"[10] If the statutory language is clear, we "follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend."[11] The statutory language must be read "in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment."[12]

Here we are also guided by the tenet that if an agency is "created by statute, the agency's authority is circumscribed by the relevant legislation."[13] "[I]t is well settled that

---

[6] Health & Saf. Code, § 34201, subd. (c).

[7] Health & Saf. Code, § 34240.

[8] Health & Saf. Code, §§ 34270, 34271; see also § 34290.

[9] *McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110.

[10] *Ibid.*, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.

[11] *Coalition of Concerned Communities, Inc. v. Los Angeles* (2004) 34 Cal.4th 733, 737.

[12] *Ibid.*

[13] *Kaiser Foundation Health Plan, Inc. v. Zingale* (2002) 99 Cal.App.4th 1018, 1023, overruled on another point by legislation (Sen. Bill No. SB 842 (2001-2002 Reg. Sess.), citing *Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 299–300. See also 25 Ops.Cal.Atty.Gen. 164, 165 (1955) ("It is axiomatic that the powers of public districts are derived from the statutes which create them and define their functions . . .").

administrative agencies have only the powers conferred on them, either expressly or by implication, by Constitution or statute,"[14] and an agency cannot itself expand the scope of authority legislatively delegated to it.[15] Our Supreme Court has explained that both local governments and housing authorities are "vested with specific duties and powers under the Housing Authorities Law and Housing Cooperation Law to effect a state objective. Neither is functioning independently of that state law. In pursuing the state objective each is governed by the state law and neither may exercise powers not vested or recognized by that law."[16]

We first observe that housing authorities are created "[i]n each city and county," and cannot operate in the first instance unless authorized by the locality in which they exist.[17] Additionally, the Housing Authorities Law defines "areas of operation" for both city and county authorities. For a city authority, the area of operation:

> includes the city and the area within five miles of its territorial boundaries. It does not include any area which lies within the territorial boundaries of another city unless the governing body of such other city has consented by resolution. It does not include any area which lies within the unincorporated area of any county for which an authority has been authorized to transact business. If a county authority becomes empowered to transact business and exercise its powers, a city authority empowered to transact business and exercise its powers in any of the unincorporated area of the county shall not initiate any further project within such unincorporated territory.[18]

A county authority's area of operation:

> includes all of the county except the area within the territorial boundaries of any city for which an authority has been authorized to transact business.

---

[14] *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1042.

[15] *Western States Petroleum Assn v. Dept. of Health Services* (2002) 99 Cal.App.4th 999, 1006.

[16] *Housing Authority of City of Los Angeles v. City of Los Angeles* (1952) 38 Cal.2d 853, 862.

[17] Health & Saf. Code, § 34240.

[18] Health & Saf. Code, § 34208.

4

Except as authorized by Section 34312.5,[19] a county authority shall not operate in any city located in the county and in which an authority has not been authorized to transact business unless the consent of the city governing body has been obtained. If an authority of a city within a county becomes empowered to transact business and exercise its powers, a county authority empowered to transact business and exercise its powers has no power to initiate any further project or leased housing within the territorial boundaries of the city, except as provided in Section 34312.5.[20]

The foregoing statutes appear in the first chapter of the Housing Authorities Law, among the general provisions.[21] The Law also allows cities and counties to band together to form "area housing authorit[ies],"[22] with the area of operation being "the combined possible areas of operation of participating cities and counties . . . ."[23]

The portion of the Housing Authorities Law that enumerates the powers and duties of housing authorities[24] also refers to the authorities' areas of operation. In the grant of power addressing the fundamental role of housing authorities, section 34312 gives a housing authority the ability to, "[w]ithin its area of operation," prepare and operate housing projects for low-income people, provide for construction or repair of a housing project, lease housing to low-income people, and finance the acquisition, construction, development, and rehabilitation of low-income housing.[25] Read together, the plain meaning of these provisions is that the Legislature intended housing authorities generally to have limited geographic areas of operation.[26] Because the statutory scheme creating housing authorities dictates that they generally operate in a circumscribed geographic area,

---

[19] That section authorizes an authority to provide leased housing throughout a county with certain exceptions. (Health & Saf. Code, § 34312.5.)

[20] Health & Saf. Code, § 34209.

[21] Health & Saf. Code, div. 24, pt. 2, ch. 1, art. 1.

[22] Health & Saf. Code, §§ 34240.1, 34246.

[23] Health & Saf. Code, § 34247.

[24] Health & Saf. Code, div. 24, pt. 2, art. 4.

[25] Health & Saf. Code, § 34312.

[26] Accord Health & Saf. Code, § 34312.3, subd. (f) ("It is the intent of the Legislature, and the Legislature declares, that housing authorities are the *local entities* with primary responsibility for providing housing for low-income and very low income households within their jurisdictions," italics added).

5

and because the scheme contains no general grant of authority to operate statewide, we conclude that housing authorities may not generally operate statewide as a matter of state law.[27]

Our conclusion is reinforced by the fact that the Housing Authorities Law specifies circumstances in which authorities may act outside their areas of operation. For example, section 34312.5 allows an authority to "provide leased housing to persons of low income throughout the county in which it operates," with two exceptions: "(1) No commitment to provide leased housing outside the area of operation may be made in advance of construction without approval of the local governing body of the city or, if an unincorporated area, the county with jurisdiction of the site of construction; and (2) Leased housing may not be provided within the area of operation of another authority if the local governing body of the other authority disapproves in advance."[28] This specific and circumscribed grant of extraterritorial authority is strong indication that the Legislature did not contemplate that housing authorities would have blanket authority to operate outside their local area.[29]

As another example, section 34314 grants authorities the ability to "arrange or contract for the furnishing by any person or agency, public or private, of services, privileges, works, or facilities for, or in connection with, a housing project," or its occupants.[30] Similarly, section 34311 allows an authority to make and execute contracts "necessary or convenient to the exercise of its powers,"[31] and some of those contracts may be with parties outside an authority's area of operation. But these limited provisions cannot be read as expanding housing authorities' statutorily defined powers.

Thus to say that a housing authority lacks jurisdiction to operate statewide generally does not mean that a housing authority may never act outside its area of operation. One commenter observes that if tenants receiving federal Section 8[32] funding to subsidize their

---

[27] See *Mulville v. City of San Diego* (1920) 183 Cal. 734, 738 (power of municipality to act outside its boundaries is entirely dependent upon legislative grant; "it does not exist unless expressly granted, necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation").

[28] Health & Saf. Code, § 34312.5, subd. (a).

[29] *In re J.W.* (2002) 29 Cal.4th 200, 209 ("the expression of one thing in a statute ordinarily implies the exclusion of other things").

[30] Health & Saf. Code, § 34314.

[31] Health & Saf. Code, § 34311, subd. (d).

[32] The federal government authorizes rental assistance payments "[f]or the purpose of

rent move out of a housing authority's area of operation, the authority is still responsible — under federal law — for providing portability of that funding until the tenants begin receiving Section 8 funding from the destination housing agency.[33] A county housing authority is expressly and specifically authorized to "apply for, process, and distribute . . . housing certificates issued pursuant to Section 8 of the United States Housing Act of 1937 (Sec. 1437 et seq., Title 42, U.S.C.) to families deemed eligible pursuant to Section 16517 of the Welfare and Institutions Code."[34] The state may adopt federal statutes by reference,[35] and thus our Legislature has incorporated Section 8's portability provisions as part of its authorization for housing authorities to administer Section 8 certificates. Moreover, the federal statutory scheme, by providing benefit portability, contemplates that Section 8 recipients might move between residences, each of which is under the jurisdiction of a different local housing authority with limited territorial jurisdiction.

We recognize that housing authorities share characteristics of both state and local agencies. But the state character of housing authorities relates to their mission in exercising the state's police powers,[36] and provides no basis for concluding that they may generally operate statewide. We have previously observed that "a housing authority is not a 'state agency' in the sense that it is part of the 'state government,' but is a 'state agency' in the sense that it performs functions of statewide concern, albeit in a limited geographical area. It is also a 'state agency' in contra-distinction to being part of city or county government. In short, a housing authority performs governmental functions of state concern *within limited boundaries*."[37]

---

aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing . . . ." (42 U.S.C. § 1437f(a).) This funding is commonly known as "Section 8," after its location in the United States Housing Act of 1937. (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 922.)

[33] 42 U.S.C. § 1437f(o)(13)(E) & (r).

[34] Health & Saf. Code, § 34327.3.

[35] *Brock v. Superior Court* (1937) 9 Cal.2d 291, 297.

[36] *Housing Authority of City of Los Angeles v. City of Los Angeles*, *supra*, 38 Cal.2d at p. 862 ("The city and the housing authority function as administrative arms of the state in pursuing the state concern and effecting the legislative objective").

[37] 64 Ops.Cal.Atty.Gen 677, 682 (1981), italics added.

Courts have also noted the mixed state and local character of housing authorities[38] and have remarked on the territorial limitations of housing authorities. For example, in *Torres v. Board of Commissioners* (1979) 89 Cal.App.3d 545, the Court of Appeal considered which open meeting act applied to housing authorities: the Ralph M. Brown Act,[39] which covers local agencies, or the Bagley-Keene Open Meeting Act,[40] which covers state agencies. The Court of Appeal concluded that, although housing authorities are state agencies for some purposes, they were either "local public agencies" or "municipal corporations" covered by the Brown Act for open meeting purposes.[41] "[A] housing authority is local in scope and character, restricted geographically in its area of operation, and *does not have statewide power or jurisdiction* even though it is created by, and is an agent of, the state rather than of the city or county in which it functions. Respondents are correct in noting that *no housing authority has statewide powers or jurisdiction . . . .*"[42]

California's Housing Authorities Law presents a statutory scheme contemplating local housing authorities developing and operating housing projects within their areas of operation. Although housing authorities may take specified actions outside their areas of operation in furtherance of their local missions as authorized or contemplated by statute, they do not have general authority under state law to operate statewide.

**2.     May a Corporation Formed by a Local Housing Authority Exercise the Statutory Powers of a Local Housing Authority Throughout the Entire State?**

An agency created by statute cannot expand the scope of its authority beyond what the Legislature has delegated to it.[43] Axiomatically, a local housing authority cannot delegate to another instrumentality authority it does not possess. "An administrative agency must act within the powers conferred upon it by law and may not act in excess of

---

[38] See *Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 534-535, 537-539 (observing that courts have labeled housing authorities either state agencies, or city or county agencies, depending on context, and discussing cases); see *id.* at pp. 539-543 (considering character of housing authorities and concluding that they are not arms of the state entitled to Eleventh Amendment immunity).

[39] Gov. Code, § 54950 et seq.

[40] Gov. Code, § 11120 et seq.

[41] *Torres v. Bd. of Comrs.* (1979) 89 Cal.App.3d 545, 549.

[42] *Id.* at p. 550, italics added.

[43] *Western States Petroleum Assn v. Dept. of Health Services*, *supra*, 99 Cal.App.4th at p. 1006.

8

those powers."[44]  Thus, a housing authority cannot delegate authority to another instrumentality to operate statewide if the housing authority itself lacks that authority.[45]

Consistent with the above, we have observed that delegations of statutory powers carry with them related statutory constraints.  Thus with respect to corporations formed by redevelopment agencies, we noted, "We do not believe . . . statutory requirements, many of which are intended to benefit persons within a redevelopment project area, may be avoided by delegating administrative responsibilities to a nonprofit corporation.  A redevelopment agency may not circumvent legislative requirements through the device of assigning administrative responsibilities to a nonprofit corporation which is subject to its control."[46]  Similarly, a housing authority may not escape statutorily imposed geographic limitations by delegating authority to a corporation or other instrumentality.

### 3.  May a Local Housing Authority Accept a Federal Grant for a Housing Project that Is Outside Its Territorial Jurisdiction?

The Housing Authorities Law authorizes housing authorities to accept "federal grants or other federal assistance" in furtherance of their mission.  Specifically, section 34327, subdivision (a) states that a housing authority may "[b]orrow money or accept federal grants or other financial assistance from the federal government for or in aid of any housing project within its area of operation."[47]  Thus, by the terms of that statute, housing authorities are empowered only to accept federal grants for projects within their areas of operation; the statute does not give them authority to accept federal grants for projects outside their areas of operation.  The expression of one concept in a statute ordinarily indicates the exclusion of others,[48] so by expressly conferring on housing authorities the power to accept federal grants for projects within their areas of operation, the Legislature

---

[44] *American Federation of Labor v. Unemployment Ins. Appeals Bd.*, *supra*, 13 Cal.4th at p. 1042.

[45] We have not been asked whether a housing authority has the power to form a corporation under its control, and this opinion assumes that it does.  This opinion also assumes that a housing authority may delegate powers to such a corporation.  (See generally *California Sch. Employees Assn. v. Personnel Com.* (1970) 3 Cal.3d 139, 144 [public agencies cannot delegate powers involving discretion or judgment absent express statutory authorization but may delegate ministerial tasks]; *Southern California Edison Co. v. Public Utilities Com.* (2014) 227 Cal.App.4th 172, 195 [same].)

[46] 81 Ops.Cal.Atty.Gen. 281, 291 (1998).

[47] Health & Saf. Code, § 34327, subd. (a).

[48] *In re J.W.*, *supra*, 29 Cal.4th at p. 209.

9

has impliedly prevented them from accepting such grants for projects outside of the area of operation.[49]

The Housing Authorities Law also contains a more general authorization to accept funding in section 34315.3: "An authority may accept financial or other assistance from any public or private source, and expend any funds so received for the purposes of this chapter and the activities permitted to authorities by state law, including leased housing."[50] But it would be a strained reading of this section to conclude that it authorizes a housing authority to accept federal grants for a housing project outside its jurisdiction. A statute must be construed in the context of the "entire scheme of which it is part so that the whole may be harmonized and retain effectiveness."[51] As noted earlier, the general scheme set out by the Housing Authorities Law is one of local authorities developing and administering housing projects within their areas of operation, and section 34327 specifically addresses federal grants for housing projects within the area of operation. Given that section 34315.3 directs that grants accepted by a housing authority must be for "purposes of this chapter and the activities permitted to authorities by state law,"[52] the interpretation in harmony with the Housing Authorities Law is that federal grants are intended to facilitate authorized activities within the authority's area of operation. Nothing in the Housing Authorities Law permits a housing authority to accept a federal grant for a project outside its jurisdiction.

One commenter notes a "distinction between a public housing *agency* under federal law and a public housing *authority* under state law," contending that an entity recognized by the federal government as a "public housing agency" may act as a contract administrator for the federal government on a statewide basis. The federal Department of Housing and Urban Development (HUD) provides various forms of funding supporting low-income housing. An organization that wishes to act as a "performance-based contract administrator" for HUD in distributing funding (and attendant responsibilities such as

---

[49] The Housing Authorities Law empowers authorities to cooperate for the purposes of financing, and under such an agreement, to act on behalf of one another. (Health & Saf. Code, § 34324.) Under this limited circumstance, it may be possible for one authority to accept federal grants for a housing project outside of its area of operation, were it handled consistently with section 34324. But we do not read this question as presenting such a scenario.

[50] Health & Saf. Code, § 34315.3.

[51] *San Leandro Teachers Assn v. Governing Bd. of San Leandro Unified School Dist.* (2009) 46 Cal.4th 822, 831, internal quotation marks omitted.

[52] Health & Saf. Code, § 34315.3.

15–1102

inspecting properties) must be recognized by HUD as a "public housing agency,"[53] defined as "any State, county, municipality, or other government entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of public housing."[54]  We are informed that all local housing authorities in California have been approved by HUD as public housing agencies, as has the California Housing Finance Agency.  Some housing authorities also have non-profit instrumentalities that are recognized as federal housing agencies, and two of those non-profits have in recent years acted as HUD's performance-based contract administrators for most of the project-based Section 8 funding from HUD in California.  Project-based Section 8 funding provides rental subsidies directly to landlords and is attached to a housing unit, rather than providing funding directly to a renter.[55]

The commenter argues that regardless whether a housing authority may operate statewide with respect to owning property, such an entity (or its instrumentality) may act throughout the State as a performance-based contract administrator for HUD when operating in its capacity as a public housing agency under federal law.[56]  But we have not been asked whether, under federal law, such an entity may act outside of its area of operation to provide contract administration services to HUD in the entity's capacity as a public housing agency.  We take no position on that question.

**4.     May an Out-of-State Housing Authority, or a Corporation Formed by an Out-of-State Housing Authority, Exercise the Powers of a Housing Authority in California?**

California, as a sovereign state, may exercise its police powers to protect the safety, health, and welfare of its citizens.[57]  The Legislature has accomplished this in part through enactment of the Housing Authorities Law, conferring on local housing authorities the

---

[53] U.S. Dept. of Housing and Urban Development, Public Housing Development Handbook (7417.1), ch. 2, § 2-2, p. 2-1 <https://www.hud.gov/program_offices/administration/hudclips/handbooks/pihh/74171> (as of Mar. 13, 2020) ("In order to participate in the public housing program, a [public housing agency] must be approved by HUD as an eligible [public housing agency]").

[54] 42 U.S.C. 1437a(b)(6)(A).

[55] 24 C.F.R. §982.1(b)(1).

[56] The commenter also contends that the funds that HUD pays to a performance-based contract administrator in relation to project-based Section 8 funding are "earned fees" for the performance of fee-for-service contracts, and are "_not_ grants."

[57] _McKay Jewelers v. Bowron_ (1942) 19 Cal.2d 595, 600.

power to promote safety, health, and welfare in defined ways.  But the Legislature has not provided this power to any other state, nor to any out-of-state corporation.

Our "federal system contemplates that individual states may adopt distinct policies to protect their own residents . . . ."[58]  California has opted to address the scarcity of low-income housing through local housing authorities, and has left no room for out-of-state housing authorities or corporations to participate in that exercise of its police powers. Thus, neither an out-of-state housing authority, nor a corporation formed by one, may exercise the powers of a housing authority in California.

*****

---

[58] *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 105.