Opinion
 

 SILLS, P. J.
 

 This is a companion case to
 
 County of Orange
 
 v.
 
 FST Sand & Gravel, Inc.
 
 (1998) 63 Cal.App.4th 353 [73 Cal.Rptr.2d 633]
 
 (FST Sand & Gravel),
 
 which we also decide today. (1) Both cases involve the question of whether a claim by a public entity is a “covered claim” for purposes of section 1063.1, subdivision (c)(4) (formerly subdivision (c)(3)) of the Insurance Code,
 
 [1]
 
 which limits the kinds of claim which the California Insurance Guarantee Association (CIGA) is potentially liable to indemnify.
 

 In
 
 FST Sand & Gravel,
 
 a county government is suing a gravel company for having trespassed on county land. In this case, a community college district
 
 *364
 
 has cross-complained against the installer of certain playground equipment, CM School Supply Co., after a minor was injured on the equipment and the minor sued the district for allowing a dangerous condition to exist on public property. CM’s insurer was ordered into liquidation and CIGA took over the defense.
 
 [2]
 
 As in
 
 FST Sand & Gravel,
 
 summary judgment was granted against the public entity on the ground that its claim is a claim by the “state” for purposes of section 1063.1, subdivision (c)(4).
 
 [3]
 
 Section 1063.1, subdivision (c)(4) defines “covered claims” to
 
 exclude
 
 any “obligations to any state or to the federal government.”
 
 [4]
 

 As we have already shown in
 
 FST Sand & Gravel,
 
 the Legislature has distinguished between “the state” and local governmental bodies numerous times in the Insurance Code. Its decision not to include such language in section 1063.1, subdivision (c)(4) therefore leads to the conclusion that it did not intend to include local government bodies in that particular statute.
 

 The question still arises, however, as to whether a community college district still might be subsumed within the words “any state” for purposes of the statute. After all, there is authority to the effect that school districts are “agencies of the state for the local operation of the state school system.”
 
 (Hall
 
 v.
 
 City of Taft
 
 (1956) 47 Cal.2d 177, 181 [302 P.2d 574].) School districts are also entitled to immunity under the 11th Amendment because they are “agents of the state that perform central governmental functions.”
 
 (Belanger
 
 v.
 
 Madera Unified School Dist.
 
 (9th Cir. 1992) 963 F.2d 248, 253.)
 

 Even so, the result we. reach in
 
 FST Sand & Gravel
 
 applies just as well to community college districts. While the references in the Insurance Code distinguishing the “state” from community college districts are not as numerous as those distinguishing the state from local government entities like a county, the Legislature has still left us enough clues, in the Insurance Code
 
 *365
 
 and elsewhere, to deduce that it never intended the word “state” to serve as a kind of shorthand for “every public entity not otherwise part of the federal government;”
 

 Sections 10270.5 and 10270.97 both use the phrase “political subdivision or district” as entities separate from “the federal or state government.” So does section 19404 of the Welfare and Institutions Code.
 

 The clincher, however, is a workers’ compensation insurance statute, section 11870. Section 11870 allows public entities to buy workers’ compensation insurance from the State Compensation Insurance Fund. The statute explicitly differentiates “The state” from “each . . . school district, irrigation district” or “any other district established by law.”
 

 The very sentence structure of section 11870 shows that the Legislature does not consider a community college district to be synonymous with “state.” Here is the list of public entities as the Legislature wrote it: “The state, any agency, department, division, commission, board, bureau, officer or
 
 other authority thereof,
 
 and
 
 each
 
 county, city and county, city,
 
 school district,
 
 irrigation district, any other district established by law, or other public corporation or quasi public corporation within the state, including any public utility operated by a private corporation may insure against its liability for compensation with the State Compensation Insurance Fund . . . .” (Italics added.)
 

 The telltale word in section 11870 is “thereof.” The word follows the various permutations of state government (“The state, any agency, department, division, commission, board, bureau, officer or other authority thereof . . .”), but it precedes the reference to school districts. School districts are lumped with cities, counties, and “other districts] established by law,” in contradistinction to the “authorities] thereof’ of the state government. As in
 
 FST Sand & Gravel
 
 we see no reason the Legislature would go to the trouble of spelling out various public entities in one statute yet assume that the one word “state” subsumes them all in another.
 

 Finally, as in
 
 FST Sand & Gravel,
 
 there is no danger of absurd results. In a word, the state and community college districts represent different sets of public pockets; therefore, it would make good sense to distinguish between them for purposes of what CIGA might otherwise be obligated to cover.
 

 Thus, the California Tort Claims Act explicitly distinguishes “the State” from public districts for purposes of the definition of “local public entity.” Government Code section 900.4 provides that: “ ‘Local public entity’ includes a county, city, district, public authority, public agency, and any other
 
 *366
 
 political subdivision or public corporation in the State,
 
 but does not include the State.”
 
 (Italics added.) By the same token, claims against community college districts are subject to the requirements of the Tort Claims Act (see generally,
 
 Loehr
 
 v.
 
 Ventura County Community College Dist.
 
 (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576]), yet the Tort Claims Act distinguishes “[c]laims by the State” from other claims against “local public entities]” (Gov. Code, § 905, subd. (i)), an appellation which includes districts. In the same vein, the Education Code is clear that a community college district is responsible for its own debts and contracts. Section 72500 of the Education Code states that “The governing board of any community college district is liable in the name of the district for all debts and contracts ...."
 

 Our conclusion is confirmed by other sections of the Education Code as well. Section 81310 of the Education Code distinguishes between community college districts and the state, going so far as to explicitly provide authority for the board of a community college district to “dedicate or convey
 
 to the state”
 
 (italics added) any real property belonging to the district. Section 14600 of the Education Code speaks of lottery funds intended for school districts to be either “free of state control” or “not . . . subject to state control.”
 

 The judgment is reversed. The appellant is to recover its costs on appeal.
 

 Wallin, J., and Crosby, J., concurred.
 

 [1]
 

 All statutory references are to the Insurance Code unless otherwise specifically indicated.
 

 [2]
 

 Perhaps “take over the defense” is too strong a phrase; CM says that CIGA ,is “administer[ing]” the cross-complaint.
 

 [3]
 

 And, as in
 
 FST Sand & Gravel,
 
 we must register our disassociation from the unbriefed and unarticulated premise necessarily underlying the trial court’s grant of summary judgment, namely that a party to a lawsuit should be allowed to prevail on the merits merely because its insurer became insolvent and the claim against it is not a “covered claim” for purposes of a statute governing the obligations of CIGA.
 

 [4]
 

 Here is the complete text of the statute: “ ‘Covered claims’ does not include any obligations of the insolvent insurer arising out of any reinsurance contracts, nor any obligations incurred after the expiration date of the insurance policy or after the insurance policy has been replaced by the insured or canceled at the insured’s request, or after the insurance policy has been canceled by the association as provided in this chapter, or after the insurance policy has been canceled by the liquidator, nor any obligations to any state or to the federal government.”