[No. E026060. Fourth Dist., Div. Two. Sept. 27, 2000.]

NORMA KIRCHMANN, Plaintiff and Appellant, v.
LAKE ELSINORE UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

**1100**

**COUNSEL**

Donal M. Hill for Plaintiff and Appellant.

Walsh & Declues, Jeffrey P. Thompson and Gregory A. Wille for Defendant and Respondent Lake Elsinore Unified School District.

No appearance for Defendants and Respondents Keith McCarthy, Normand Tanguay, David Long, Jeanie Corral, Richard Jenkins, Vick Knight, Jeannine Martineau and Sonja Wilson.

**OPINION**

**RICHLI, Acting P. J.**—The issue in this case is whether the Lake Elsinore Unified School District (the District) is immune from suit under title 42 United States Code section 1983 (hereafter section 1983) as an instrumentality of the State of California. As we will discuss, public education in California is "uniquely a fundamental concern of the State" (*Butt v. State of California* (1992) 4 Cal.4th 668, 685 [15 Cal.Rptr.2d 480, 842 P.2d 1240]), and "[t]he Constitution has always vested 'plenary' power over education not in the districts, but in the State . . . ." (*Id.*, at p. 688.) Therefore, in accordance with authority of the Ninth Circuit Court of Appeals holding that a California school district is an arm of the state for Eleventh Amendment purposes (*Belanger v. Madera Unified School Dist.* (9th Cir. 1992) 963 F.2d 248, 254), we will conclude the District does enjoy the state's immunity from liability under section 1983.

I

FACTUAL AND PROCEDURAL BACKGROUND

The facts are set forth in detail in this court's previous decision in this case, *Kirchmann v. Lake Elsinore Unified School Dist.* (1997) 57 Cal.App.4th 595 [67 Cal.Rptr.2d 268]. Norma Kirchmann, an employee of the District, was suspended for 30 days after she anonymously communicated to bidders on a District construction management contract her view that a conflict of interest existed in the selection process. Kirchmann petitioned for a writ of mandate to overturn the suspension. This court concluded Kirchmann's communication was protected by the First Amendment, and the suspension therefore was improper. (*Id.*, at p. 614.)

Kirchmann then sued the District under section 1983. The District demurred, arguing it was an arm of the state and therefore immune from suit

under section 1983. The court sustained the demurrer, and Kirchmann appealed.

## II

### DISCUSSION

A. *The Belanger Decision*

■ Section 1983 provides, in relevant part, that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Local governmental bodies such as cities and counties are considered "persons" subject to suit under section 1983. (*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690-691 [98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611].) States and their instrumentalities, on the other hand, are not. (*Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58, 68-69 [109 S.Ct. 2304, 2311, 105 L.Ed.2d 45].)

■ To our knowledge, no previous decision has considered the precise question here, whether a California school district should be considered a local governmental body subject to suit under section 1983, or an instrumentality of the state exempt from suit.[1] In *Belanger v. Madera Unified School Dist., supra*, 963 F.2d 248 (hereafter *Belanger*), however, the Ninth Circuit Court of Appeals considered a closely related question—whether a California school district was an arm of the state for purposes of the Eleventh Amendment.

■ The Eleventh Amendment prohibits federal courts from hearing "any suit in law or equity, commenced or prosecuted against one of the United States . . . ." The prohibition "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." (*Regents of Univ. of Cal. v. Doe* (1997) 519 U.S. 425, 429 [117 S.Ct. 900, 903, 137 L.Ed.2d 55].) The *Belanger* court concluded the school district was an arm of the state,[2] and therefore enjoyed Eleventh Amendment immunity. The court noted that,

---

[1]At least two reported California decisions have involved section 1983 claims against a school district or board, but neither court discussed whether a school district has immunity as a state instrumentality. (*Thorning v. Hollister School Dist.* (1992) 11 Cal.App.4th 1598 [15 Cal.Rptr.2d 91]; *McDaniel v. Board of Education* (1996) 44 Cal.App.4th 1618 [52 Cal.Rptr.2d 448].)

[2]We use the term "arm of the state" because that is the term typically employed in federal decisions considering whether a state entity is entitled to Eleventh Amendment immunity.

unlike school districts in most states, California districts were funded primarily by the state. This was attributable to two factors—first, the need to ensure equality of funding as required by *Serrano v. Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929], and second, the limitations on local property tax revenues imposed by Proposition 13. Therefore, a judgment against the school district would be paid using state funds. (*Belanger, supra,* 963 F.2d at pp. 251-252.)

In addition, the *Belanger* court noted, public education was a matter of statewide concern in California. The state exercised substantial control over school affairs and maintained beneficial ownership of school district property. The California Supreme Court had described school districts as " 'agencies of the state for the local operation of the state school system.' " (*Belanger, supra,* 963 F.2d at p. 254, quoting *Hall v. City of Taft* (1956) 47 Cal.2d 177, 179 [302 P.2d 574].)

Other Ninth Circuit decisions, and decisions of federal district courts in the Ninth Circuit, similarly have extended Eleventh Amendment immunity to a California county office of education (*Eaglesmith v. Ward* (9th Cir. 1995) 73 F.3d 857, 860); to California community college districts (*Mitchell v. Los Angeles Community College Dist.* (9th Cir. 1988) 861 F.2d 198, 201; *Cerrato v. San Francisco Community College Dist.* (9th Cir. 1994) 26 F.3d 968, 972; *Wasson v. Sonoma County Jr. College Dist.* (N.D.Cal. 1997) 4 F.Supp.2d 893, 901-902; *Stones v. Los Angeles Community College Dist.* (C.D.Cal. 1983) 572 F.Supp. 1072, 1076-1078), and, under *Belanger,* to a city school district. (*Doe v. Petaluma City School Dist.* (N.D.Cal. 1993) 830 F.Supp. 1560, 1577.) At least one California court also has relied on *Belanger* for the proposition that a school district enjoys Eleventh Amendment immunity. (*Cutler-Orosi Unified School Dist. v. Tulare County School etc. Authority* (1994) 31 Cal.App.4th 617, 633 [37 Cal.Rptr.2d 106].)

The District contends that, since under *Belanger* a school district is an arm of the state for Eleventh Amendment purposes, it is an instrumentality of the state for purposes of section 1983 and hence immune from suit under that

(See, e.g., *Regents of Univ. of Cal. v. Doe, supra,* 519 U.S. 425, 429-430 [117 S.Ct. 900, 904]; *Mt. Healthy City Board of Ed. v. Doyle* (1977) 429 U.S. 274, 280 [97 S.Ct. 568, 572, 50 L.Ed.2d 471].) The *Belanger* court used the terms "state agency" and "agent of the state." (*Belanger, supra,* 963 F.2d at pp. 250-254.) It has been suggested that the terms "state agency" and "arm of the state" may not be synonymous. (*Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 535 [65 Cal.Rptr.2d 620].) Because *Belanger* employed the same Eleventh Amendment analysis as the decisions which use the term "arm of the state," we do not consider the difference in nomenclature to be significant. We agree with the court in *Lynch v. San Francisco Housing Authority, supra,* that "[i]t is the relationship between the entity and the state, not the label attached to the entity," that determines whether the Eleventh Amendment applies. (55 Cal.App.4th at p. 536.)

statute. Kirchmann challenges this conclusion on two grounds. First, she argues the fact an entity may be entitled to Eleventh Amendment immunity does not necessarily mean it is immune from suit under section 1983. Second, she argues that, even if the Eleventh Amendment immunity analysis is applicable in determining immunity from suit under section 1983, *Belanger* was incorrect in concluding a California school district enjoys Eleventh Amendment protection.

B. *Applicability of Eleventh Amendment Analysis*

 Kirchmann's first argument is relatively easy to answer. She contends that, because the Eleventh Amendment only prohibits suit against a state in *federal court*, Eleventh Amendment analysis does not control whether an entity can be sued in state court, even on a federal cause of action such as a section 1983 claim.

The fact that a claim against a state or its agency cannot be brought in federal court due to the Eleventh Amendment does not, of course, necessarily mean the claim cannot be asserted in state court either. Tort actions may be brought against the state or its agencies in state court under the California Tort Claims Act (Gov. Code, § 810 et seq.) but may not be brought in federal court, because the consent to suit contained in the act (Gov. Code, § 945) is not a waiver of Eleventh Amendment immunity. (*BV Engineering v. Univ. of Cal., Los Angeles* (9th Cir. 1988) 858 F.2d 1394, 1396; *Riggle v. State of Cal.* (9th Cir. 1978) 577 F.2d 579, 585-586.)

However, the analysis of the United States Supreme Court in *Will v. Michigan Dept. of State Police, supra,* 491 U.S. 58 (hereafter *Will*), and subsequent decisions construing *Will,* make clear that, if an entity enjoys Eleventh Amendment immunity, it is also immune from suit under section 1983, even in state court. The court in *Will* did state that the scope of the Eleventh Amendment and the scope of section 1983 were "[c]ertainly" separate issues. (*Will, supra,* at p. 66 [109 S.Ct. at p. 2310].) But in holding states immune from section 1983 suits, the court noted that section 1983 was enacted in response to the inability or unwillingness of state authorities to protect civil rights. Therefore, although Congress did not establish federal courts as the exclusive forum for section 1983 suits, it plainly intended federal courts to have " 'a paramount role' " in enforcing the statute. (*Will, supra,* at p. 66 [109 S.Ct. at p. 2309].)

In light of that fact, the *Will* court concluded the fact that Congress did not override states' Eleventh Amendment immunity against suit in federal court under section 1983 indicated it also did not intend states to be subject to suit in *state court* under section 1983: "Given that a principal purpose behind the

enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983." (*Will, supra,* 491 U.S. at p. 66 [109 S.Ct. at p. 2310].)

From this reasoning it follows that, if an entity is not subject to suit under section 1983 in federal court because of the Eleventh Amendment, Congress presumably did not intend that it be subject to suit under section 1983 in state court either. Accordingly, numerous courts have concluded that, under *Will*, "states and 'governmental entities that are considered "arms of the State" for Eleventh Amendment purposes' are not 'persons' subject to liability under section 1983 *in any forum*." (*Lynch v. San Francisco Housing Authority, supra,* 55 Cal.App.4th 527, 532, italics added; see also *Thompson v. City of Los Angeles* (9th Cir. 1989) 885 F.2d 1439, 1443 [because University of California "is an arm of the state under the Eleventh Amendment, it follows from *Will* that UC is not a 'person' within the meaning of § 1983"]; *Simon v. State Compensation Ins. Authority* (Colo. 1997) 946 P.2d 1298, 1302 ["[U]nder *Will*, an Eleventh Amendment arm-of-the-state analysis must be applied to determine whether a state-created entity is a 'person' under § 1983"] and decisions cited at p. 1302, fn. 5; *Brooks v. Center for Healthcare Services* (Tex.App. 1998) 981 S.W.2d 279, 284 [Under *Will*, "states and entities that may be characterized as arms of the state for purposes of the Eleventh Amendment may not be held liable under § 1983"]; *Board of Trustees Hamilton v. Landry* (Ind.Ct.App. 1994) 638 N.E.2d 1261, 1263 [Indiana school corporation was not arm of state entitled to Eleventh Amendment immunity, and therefore was a " 'person' amenable to suit under Section 1983"].) The United States Supreme Court similarly has stated albeit in dictum, that under *Will* "an entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983." (*Howlett by and through Howlett v. Rose* (1990) 496 U.S. 356, 365, 381, fn. 24 [110 S.Ct. 2430, 2437, 2445, fn. 24, 110 L.Ed.2d 332] [declining to decide whether Florida school district is a "person" under § 1983].)

Kirchmann argues this analysis should not apply in California, because by enacting the Tort Claims Act the state has waived sovereign immunity against any and all statutory claims in state court actions, even if the Eleventh Amendment would not permit such a claim to be brought in federal court. She points to Government Code sections 815, which provides that a public entity is not liable for an injury "[e]xcept as otherwise provided by statute," and 811.2, which defines "statute" to include an act of Congress such as section 1983.

Kirchmann overlooks the fact that whether an entity is a "person" subject to suit under section 1983 is a matter of *federal* law and is not affected by whether the entity has sovereign immunity under state law. The United States Supreme Court said in *Howlett by and through Howlett v. Rose, supra,* 496 U.S. 356 [110 S.Ct. 2430, 110 L.Ed.2d 332]: "The elements of, and the defenses to, a federal cause of action are defined by federal law. [Citations.] *A State may not, by statute or common law, create a cause of action under § 1983 against an entity whom Congress has not subjected to liability.* [Citation.] Since this Court has construed the word 'person' in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant." (496 U.S. at pp. 375-376 [110 S.Ct. at pp. 2442-2443], italics added.)

Thus, California cannot, by enacting the California Tort Claims Act, make school districts liable under section 1983 if they are not "persons" subject to section 1983 liability under federal law. As *Will* and its progeny demonstrate, the answer to that question depends on whether an entity is an arm of the state for Eleventh Amendment purposes.

We therefore apply an Eleventh Amendment analysis in deciding whether the District is subject to suit under section 1983.

### C. *Whether the District Is an Arm of the State*

Kirchmann's second contention—that *Belanger* was incorrect in holding a California school district to be an arm of the state for Eleventh Amendment purposes—requires more extensive discussion.

#### 1. *Applicable law*

"[T]he question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law." (*Regents of Univ. of Cal. v. Doe, supra,* 519 U.S. 425, 429, fn. 5 [117 S.Ct. 900, 904] (hereafter *Doe*).) Even on matters of federal law, of course, this court is not bound by lower federal court authority. (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782-783 [67 Cal.Rptr.2d 357].) *Belanger* therefore does not necessarily control the present case. Instead, we must make an independent determination of federal law. (*Forsyth v. Jones, supra,* at pp. 782-783.)

Moreover, whether a state agency enjoys Eleventh Amendment immunity "can be answered only after considering the provisions of state law that define the agency's character." (*Doe, supra,* 519 U.S. 425, 429, fn. 5 [117 S.Ct. 900, 904].) Therefore, we also must consider state law in our analysis.

### 2. Relevant criteria

"A uniform test for defining the class of entities that share in the state's Eleventh Amendment immunity has not yet developed." (*Lynch v. San Francisco Housing Authority, supra,* 55 Cal.App.4th 527, 533.) In general, however, the court must examine "the relationship between the State and the entity in question." (*Doe, supra,* 519 U.S. 425, 429 [117 S.Ct. 900, 904].)

*Mt. Healthy City Board of Ed. v. Doyle, supra,* 429 U.S. 274 (hereafter *Mt. Healthy*) is particularly relevant here because it involved a local school board. In *Mt. Healthy,* the court held an Ohio city school board did not enjoy Eleventh Amendment immunity, because the board was "more like a county or city than . . . like an arm of the State." (*Id.,* at p. 280 [97 S.Ct. at p. 573].) It noted that under state law school districts were political subdivisions, and the state did not include political subdivisions. Furthermore, although the school board was subject to "some" guidance from the State Board of Education and received "a significant amount of money" from the state, it also had extensive powers to issue bonds and to levy taxes within certain restrictions. (*Id.,* at p. 280 [97 S.Ct. at p. 573].)

Recently, the court in *Lynch v. San Francisco Housing Authority, supra,* 55 Cal.App.4th 527 set forth the criteria that federal decisions have found to be relevant in determining whether a state entity should have Eleventh Amendment immunity: whether a money judgment against the entity would be satisfied out of state funds; the degree of funding the entity receives from the state; whether the entity has independent authority to raise funds; the extent of state control over the entity's fiscal affairs; whether the entity performs central governmental functions; whether the entity may sue, be sued, and hold property in its own name; the corporate status of the entity under state law; the degree of autonomy enjoyed by the entity; the entity's immunity from state taxation; and the geographic scope of the entity's operation. (*Id.,* at pp. 533-534.)

 We believe the criteria identified in *Lynch* usefully can be grouped into two broad categories. The first category, comprising the first four criteria, concerns the degree of state involvement in the entity's fiscal affairs. The second category, comprising the remaining six criteria, concerns the political status which state law affords the entity. We will organize our analysis around these two categories.

### 3. Analysis

We begin by noting that most courts after *Mt. Healthy* have declined to extend Eleventh Amendment immunity to local school districts and boards.

In 1990, the United States Supreme Court, citing *Mt. Healthy* but without further analysis, said: "[T]he Eleventh Amendment . . . does not afford local school boards . . . immunity from suit . . . ." (*Missouri v. Jenkins* (1990) 495 U.S. 33, 56, fn. 20 [110 S.Ct. 1651, 1665-1666, fn. 20, 109 L.Ed.2d 31].) Lower federal courts, and state courts, have reached the same conclusion.[3]

These decisions, of course, are of limited assistance here, since they all involved school authorities in states other than California. Nonetheless, we will consider the discussion in these decisions to the extent it is relevant in determining whether *Belanger* correctly reached the opposite conclusion with respect to California school districts.

### a. *Fiscal affairs*

Of the criteria included in our first broad category—the degree to which the state is involved in an entity's fiscal affairs—the one most often emphasized is the impact that a judgment against the entity would have on the state treasury. The Supreme Court in *Hess v. Port Authority Trans-Hudson Corporation* (1994) 513 U.S. 30 [115 S.Ct. 394, 130 L.Ed.2d 245] (hereafter *Hess*) noted, ". . . Courts of Appeals have recognized the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations." (*Id.,* at p. 48 [115 S.Ct. at p. 404].) The court later noted that the "prevailing view" was that " 'whether any judgment must be satisfied out of the state treasury' " was " 'the most important consideration' in resolving an

---

[3](See, e.g., *Narin v. Lower Merion School Dist.* (3d Cir. 2000) 206 F.3d 323, 331, fn. 6 [Pennsylvania school district]; *Duke v. Grady Mun. Schools* (10th Cir. 1997) 127 F.3d 972, 981-982 [New Mexico school district and board]; *San Antonio School Dist. v. McKinney* (Tex. 1996) 936 S.W.2d 279, 284 [Texas school district]; *Doe v. Knox County Bd. of Educ.* (E.D.Ky. 1996) 918 F.Supp. 181, 183 [Kentucky county board of education]; *Green v. Clarendon County School Dist. Three* (D.S.C. 1996) 923 F.Supp. 829, 850 [South Carolina school district]; *Daddow v. Carlsbad Mun. School Dist.* (1995) 120 N.M. 97, 105-106 [898 P.2d 1235, 1243-1244] [New Mexico school board]; *Board of Trustees Hamilton v. Landry, supra,* 638 N.E.2d at p. 1266 [Indiana school corporation]; *Ambus v. Granite Bd. of Educ.* (10th Cir. 1993) 995 F.2d 992, 997 [Utah school district]; *Stewart v. Baldwin County Bd. of Educ.* (11th Cir. 1990) 908 F.2d 1499, 1511 [Alabama county board of education]; *Rosa R. v. Connelly* (2d Cir. 1989) 889 F.2d 435, 437-438 [Connecticut school board]; *Fay v. South Colonie Cent. School Dist.* (2d Cir. 1986) 802 F.2d 21, 27-28 [New York school district]; *Gary A. v. New Trier High School Dist. No. 203* (7th Cir. 1986) 796 F.2d 940, 945 [Illinois school district and board]; *Minton v. St. Bernard Parish School Bd.* (5th Cir. 1986) 803 F.2d 129, 131-132 [Louisiana school board]; *Stoddard v. School Dist. No. 1, etc.* (10th Cir. 1979) 590 F.2d 829, 835 [Wyoming school district]; *Unified School Dist. No. 480 v. Epperson* (10th Cir. 1978) 583 F.2d 1118, 1123 [Kansas school district]; *Campbell v. Gadsden County Dist. School Bd.* (5th Cir. 1976) 534 F.2d 650, 655-656 [Florida school board]; *Adams v. Rankin County Bd. of Ed.* (5th Cir. 1975) 524 F.2d 928, 929 [Mississippi county school system]; but cf. *Hadley v. North Ark. Community Technical College* (8th Cir. 1996) 76 F.3d 1437, 1442 [community college was an arm of the state].)

Eleventh Amendment immunity issue." (*Id.,* at p. 51 [115 S.Ct. at p. 406].) The court based its emphasis on the state treasury factor on the fact that the "impetus for the Eleventh Amendment" was "the prevention of federal-court judgments that must be paid out of a State's treasury." (*Id.,* at p. 48 [115 S.Ct. at p. 404].) The court stopped short of saying the state treasury factor was conclusive, but noted that the briefs filed by the states involved in the case before it stated the vast majority of federal circuits had generally accorded the factor " 'dispositive weight.' " (*Id.,* at p. 49 [115 S.Ct. at p. 405].)

In *Doe,* the Supreme Court held that the University of California enjoyed Eleventh Amendment immunity against a breach of contract action even though the federal government had agreed to pay any judgment arising from the action. (*Doe, supra,* 519 U.S. at pp. 430-431 [117 S.Ct. at pp. 904-905].) The court said that, in determining immunity, the relevant factor is "a State's *legal liability for judgments* against a state agency," not the "formalistic question of ultimate financial liability." (*Id.,* at pp. 430-431, [117 S.Ct. at p. 904] italics added.)

*Hess* and *Doe* could be read to mean that, if a state would not be legally obligated to pay from its treasury a judgment against an entity, the entity is not an arm of the state for Eleventh Amendment purposes, regardless of the degree to which the state is involved in the entity's financial or other affairs. (See, e.g., *Duke v. Grady Mun. Schools, supra,* 127 F.3d 972, 981 [no immunity where state not legally liable for judgment against school district, even though district received 98 percent of its funds from state]; *San Antonio School Dist. v. McKinney, supra,* 936 S.W.2d 279, 284 [no immunity where judgment against a school district would be paid "from the funds of the school district, whether generated locally or appropriated by the State, not from the state treasury"].) In that event, *Belanger'*s conclusion that California school districts are arms of the state because they are principally state funded would be questionable, unless it were also shown that the state treasury would be directly vulnerable to a judgment in the particular case.

As a general matter of California law, the state does not have respondeat superior liability for the acts of a school district. (*Johnson v. San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 698-700 [266 Cal.Rptr. 187].) In addition, Government Code section 970, which governs payment of judgments against public entities, distinguishes between "the state or any . . . agency of the state claims against which are paid by warrants drawn by the Controller" and a "local public entity." (*Id.,* subd. (c).) Although the definition of "local public entity" in section 970, subdivision (c), does not expressly include a school district, the California Law Revision Commission

Comment to section 970 states that enactment of the section "permits the repeal of a number of special statutes applying to particular types of local public entities: [former] Educ. Code §§ 35201 (duty of *school district* to pay 'any judgment for debts, liabilities, or damages') . . . ." (Cal. Law Revision Com. com., 1980 amend., 32A pt. 1 West's Ann. Gov. Code (1995 ed.) foll. § 970, p. 110, italics added.) Thus it appears that, for purposes of paying judgments, a school district is not considered an agency whose liabilities "are paid by warrants drawn by the Controller."

However, we decline to read *Hess* and *Doe* to preclude immunity based on this single factor. *Hess* is unusual in that it involved an entity created by two states with the consent of Congress. The court noted that, because the federal government was involved, subjecting the entity to suit in federal court did not present the Eleventh Amendment problems that might exist with respect to a wholly state-created entity. (*Hess, supra*, 513 U.S. 30, 41 [115 S.Ct. 394, 401].) In fact, the court was required to *presume* the bistate entity did not qualify for immunity, unless it was shown that the states and Congress intended it to be immune. (*Id.*, at pp. 43-44 [115 S.Ct. at pp. 402-403].) No such presumption exists with respect to single state entities such as school districts.

Further, as noted, the court in *Hess* stopped short of saying the state's legal liability was dispositive. To the contrary, the court stated the test for immunity as follows: "If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is 'No'—*both legally and practically*—then the Eleventh Amendment's core concern is not implicated." (*Hess, supra,* 513 U.S. at p. 51 [115 S.Ct. at p. 406], italics added.) Similarly, the court said in a previous decision that the purpose of Eleventh Amendment immunity was to "protect the state treasury from liability that would have had *essentially the same practical consequences* as a judgment against the State itself." (*Lake Country Estates v. Tahoe Planning Agcy.* (1979) 440 U.S. 391, 401 [99 S.Ct. 1171, 1177, 59 L.Ed.2d 40], fn. omitted, italics added.)

The italicized language suggests that whether the state is legally liable for a judgment against an entity is only one factor. The court also must consider whether the state is "practically" liable, as would arguably be the case where the state provides the entity's funding and therefore would indirectly end up paying a judgment against it. (See, e.g., *Hadley v. North Ark. Community Technical College, supra*, 76 F.3d 1437, 1439-1441 [community college was arm of state where, even if college could initially pay judgment from other sources, state would ultimately make up budget shortfall].)

The court in *Doe* also did not say legal liability was the only relevant question. To the contrary, it appeared to endorse a flexible approach under

which a variety of factors would be considered. The court noted that in past cases it had "sometimes examined 'the essential nature and effect of the proceeding,' . . . and sometimes focused on the 'nature of the entity created by state law' to determine whether it should 'be treated as an arm of the State,' . . . ." (*Doe, supra,* 519 U.S. at pp. 429-430 [117 S.Ct. at p. 904], fn. omitted.) The *Doe* court did say that "whether a money judgment against a state instrumentality or official would be enforceable against the State is of *considerable importance* to any evaluation of the relationship between the State and the entity or individual being sued." (*Id.,* at p. 430 [117 S.Ct. at p. 904], italics added.) Again, however, the italicized language suggests that although the liability factor is important, it is only one factor in considering "the relationship between the State and the entity . . . ."

Additionally, the only question in *Doe,* which the court described as a "narrow" one, was whether the university's ability to seek indemnification from the federal government vitiated its Eleventh Amendment immunity. The court expressly declined to reexamine the Ninth Circuit authority holding the university was an arm of the state. (*Doe, supra,* 519 U.S. at p. 432 [117 S.Ct. at p. 905].) *Doe* thus stands merely for the proposition that the fact state funds are *not* actually used to pay a judgment for which the state *is* legally liable does not *preclude* immunity. It does not follow that the converse is also true, i.e., that if an entity uses funds provided by the state to pay a judgment for which the state is *not* legally liable, there can be no immunity.

Finally, neither *Hess* nor *Doe* gave any indication of disagreement with the immunity analysis employed in *Mt. Healthy.* In fact, both decisions cited *Mt. Healthy.* (*Hess, supra,* 513 U.S. at p. 47 [115 S.Ct. at p. 404]; *Doe, supra,* 519 U.S. at p. 430 [117 S.Ct. at p. 904].) Yet the court in *Mt. Healthy*—the authority most relevant here since it involved a school board—appears not to have considered the legal liability of the state at all. (*Mt. Healthy, supra,* 429 U.S. 274, 280-281 [97 S.Ct. 568, 572-573].) Instead, the court examined "the nature of the entity created by state law," the extent of state guidance and funding, and the entity's independent ability to raise funds. (*Id.,* at p. 280 [97 S.Ct. at p. 573].)

Subsequent decisions have declined to interpret *Hess* and *Doe* as reducing the Eleventh Amendment inquiry to a question of the state's legal liability for a judgment against the entity. In *Gray v. Laws* (4th Cir. 1995) 51 F.3d 426, the Fourth Circuit noted that, in fact, *Hess* identified other factors as also relevant, such as the state's characterization of the entity, the entity's functions, and the extent of state control. (*Id.,* at pp. 432-433.) The *Gray*

court concluded the correct approach under *Hess* was that, if the state treasury *would* be liable for a judgment, that fact was "largely, if not wholly, dispositive," and the entity would be entitled to immunity. (*Gray, supra,* at p. 433.) If, on the other hand, the state's treasury *would not* be affected by a judgment, then the court should consider the other relevant factors, including "whether the state possesses such control over the entity . . . that it can legitimately be considered an 'arm of the state.' " (*Id.,* at p. 434.)

The court in *Simon v. State Compensation Ins. Authority, supra,* 946 P.2d 1298 similarly concluded that under *Hess* and *Doe* "the judgment liability factor alone does not resolve whether an entity is entitled to Eleventh Amendment immunity." (*Simon, supra,* at p. 1306.) The court noted that both *Hess* and *Doe* considered other factors as well and that neither rejected the multifactor "balancing" test employed in *Mt. Healthy* despite having the opportunity to do so. Therefore, it concluded the balancing test remained in effect. (*Simon, supra,* at p. 1307.)

Employing that analysis here, we find a number of factors that favor immunity. The California Constitution obligates the state Legislature to "provide for a system of common schools . . . ." (Cal. Const., art. IX, § 5.) As the *Belanger* court noted, school districts receive their funding primarily from the state. The Education Code provides that the state Controller during each fiscal year shall transfer from the general fund of the state to the state school fund a specified amount per pupil. (Ed. Code, § 14002.) The state Superintendent of Public Education is required to certify to the Controller the amounts estimated to be apportioned to each school during the ensuing fiscal year. (Ed. Code, § 41330.) As the California Supreme Court has recognized, "since the adoption in June 1978 of Proposition 13, limiting local taxation of real property (Cal. Const., art. XIII A), school districts have become more dependent on appropriations by the Legislature for a major part of their revenue." (*Cumero v. Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 592 [262 Cal.Rptr. 46, 778 P.2d 174], fn. omitted.)

Further, although funds received by school districts are to be paid into the county treasury for the credit of the district (Ed. Code, §§ 41001, 41002), numerous courts have stated that " '[s]chool moneys *belong to the state* and the apportionment of funds to a school district does not give the district a proprietary interest in the funds. . . .' " (*Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.* (1996) 43 Cal.App.4th 630, 635 [50 Cal.Rptr.2d 824], italics added; accord, *Hayes v. Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1578, fn. 5 [15 Cal.Rptr.2d 547]; *California Teachers Assn. v. Hayes* (1992) 5 Cal.App.4th 1513, 1525 [7 Cal.Rptr.2d 699].)

Because school district funds are considered funds of the state, payment of a judgment from such funds would have "essentially the same practical consequences as a judgment against the State itself." (*Lake Country Estates v. Tahoe Planning Agcy, supra*, 440 U.S. 391, 401 [99 S.Ct. 1171, 1177].)

School districts are authorized to raise their own revenues by issuing and selling bonds, with the approval of the electors of the district. However, state law specifies the purposes for which the proceeds may be used. (Ed. Code, § 15100.) In addition, the state Constitution requires that general obligation bond proposals of school districts be approved by a two-thirds vote. (Cal. Const., art. XVI, § 18.) Similarly, while school districts are authorized to impose development charges to finance school construction, the state Legislature has declared that such financing measures are "matters of statewide concern" and for that reason has "occupie[d] the subject matter . . . to the exclusion of all other measures" on the subject. (Gov. Code, § 65995, subd. (e); see also *Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 918 [16 Cal.Rptr.2d 226, 844 P.2d 545].)

Finally, although in general the state is not legally responsible for the obligations of a school district, the California Supreme Court has ruled that in some instances the state has a constitutional duty to assume responsibility for the operations of a school district, including its fiscal affairs. In *Butt v. State of California, supra*, 4 Cal.4th 668, a school district lacked funds to complete the final six weeks of its school term. The Supreme Court affirmed an injunction authorizing the state Superintendent of Public Instruction to displace the school board, operate the district through his own administrator, and impose a plan for the district's permanent financial recovery. (*Id.*, at pp. 694, 696, 704.)

The court in *Butt* explained that the California Constitution "makes public education uniquely a fundamental concern of the State . . . ." (*Butt v. State of California, supra*, 4 Cal.4th at p. 685.) It rejected the state's contention that school districts would "feel free to overspend if encouraged to believe in the availability of State relief." (*Id.*, at p. 690.) The court further noted that the state itself had endorsed a policy of emergency conditional loan assistance to districts in financial difficulty. (*Ibid.*; see Ed. Code, § 41320.2.)

California statutes and case law thus demonstrate the state's extensive responsibility for and involvement in the fiscal affairs of school districts. On balance, the criteria included in this category of factors favor treating a school district as an arm of the state.

b. *Political status*

As identified by the court in *Lynch v. San Francisco Housing Authority, supra*, 55 Cal.App.4th 527, the relevant factors in assessing the political

status afforded a government entity by the state include whether the entity performs central governmental functions; whether the entity may sue, be sued, and hold property in its own name; the corporate status of the entity under state law; the degree of autonomy enjoyed by the entity; the entity's immunity from state taxation; and the geographic scope of the entity's operation. (*Id.*, at pp. 533-534.)

There can be little dispute that the function performed by school districts, the education of the public, is a matter of central governmental concern. In *Butt v. State of California, supra,* 4 Cal.4th 668, the California Supreme Court stated: "Public education is an obligation which the State assumed by the adoption of the Constitution. . . . '[M]anagement and control of the public schools [is] a matter of state[, not local,] care and supervision. . . .' . . . Local districts are the State's agents for local operation of the common school system . . . ." (*Id.*, at pp. 680-681.) The court further observed that "[t]he Constitution has always vested 'plenary' power over education not in the districts, but in the State, through its Legislature, which may create, dissolve, combine, modify, and regulate local districts at pleasure." (*Id.*, at p. 688.)

As examples of state regulation of school affairs, the court in *Butt* cited Education Code sections addressing "such matters as county and district organization, elections, and governance. . . ; educational programs, instructional materials, and proficiency testing. . . ; sex discrimination and affirmative action. . . ; admission standards. . . ; compulsory attendance. . . ; school facilities. . . ; rights and responsibilities of students and parents. . . ; holidays. . . ; school health, safety, and nutrition. . . ; teacher credentialing and certification. . . ; rights and duties of public school employees. . . ; and the pension system for public school teachers." (*Butt v. State of California, supra,* 4 Cal.4th 668, 689, citations omitted.)

We recognize that other statutory and constitutional provisions sometimes treat school districts in the same manner as governmental entities which do not enjoy Eleventh Amendment immunity, such as cities and counties, for certain purposes. (See, e.g., Cal. Const., art. XIII B, § 8; Gov. Code, §§ 54240, 54951, 82041 [defining school district as "local" government agency]; but see Gov. Code, § 17561 [referring separately to "local agency" and "school district" for purposes of reimbursement for state-mandated costs].) However, "[l]abeling an entity as a 'state agency' in one context does not compel treatment of that entity as a 'state agency' in all contexts." (*Lynch v. San Francisco Housing Authority, supra,* 55 Cal.App.4th 527, 534; see also *Doe, supra,* 519 U.S. 425, 427, fn. 2 [117 S.Ct. 900, 903] [declining

to decide "whether there may be some state instrumentalities that qualify as 'arms of the State' for some purposes but not others"].) Conversely, it should follow that labeling an entity as a local agency for some purposes also should not compel treatment of it as such for all purposes. For this reason, authority distinguishing between the state and school districts in non-Eleventh-Amendment contexts (e.g., *North Orange County Community College Dist. v. CM School Supply Co.* (1998) 63 Cal.App.4th 362, 366 [73 Cal.Rptr.2d 791]; *LeVine v. Weis* (1998) 68 Cal.App.4th 758, 766 [80 Cal.Rptr.2d 439]) is not controlling.

Moreover, California courts have observed that the state's pervasive involvement in school affairs makes its relationship with school districts qualitatively different from its relationship with entities such as cities and counties: "A school district's relationship to the state is different from that of local governmental entities such as cities, counties, and special districts. . . . Local school districts are agencies of the state and have been described as quasi-municipal corporations. [Citation.] They are not distinct and independent bodies politic." (*Hayes v. Commission on State Mandates*, *supra*, 11 Cal.App.4th 1564, 1578-1579, fn. 5; accord, *California Teachers Assn. v. Hayes*, *supra*, 5 Cal.App.4th 1513, 1524.) This distinction in California law between school districts and cities and counties is especially significant in view of the United States Supreme Court's repeated formulation of the ultimate Eleventh Amendment question as whether an entity "is more like a county or city than it is like an arm of the State" (*Mt. Healthy*, *supra*, 429 U.S. 274, 280 [97 S.Ct. 568, 573]) and whether it "has the same kind of independent status as a county or is instead an arm of the State . . . ." (*Doe*, *supra*, 519 U.S. 425, 429, fn. 5 [117 S.Ct. 900, 904].)

Similarly, while a California school district's governing board may hold and convey property for the use and benefit of the district (Ed. Code, § 35162), the California Supreme Court has stated that "[t]he beneficial ownership of property of the public schools is in the state. . . . '[T]he beneficial owner of the fee [of public school property] is the state itself, and . . . its agencies and mandatories—the various public and municipal corporations in whom the title rests—are essentially nothing but trustees of the state, holding the property and devoting it to the uses which the state itself directs.'" (*Hall v. City of Taft*, *supra*, 47 Cal.2d 177, 181-182.) Consequently, a school district's ability to own property does not indicate it is not an arm of the state.

The remaining criteria do not appear to militate strongly one way or the other. School districts may sue and be sued independently of the state (Ed.

Code, § 35162), and they operate within specific geographical limits rather than statewide. But this is also true of community college districts which, as stated previously, have been found to be arms of the state. (Ed. Code, § 72000.) Conversely, although school districts have the same exemption from property taxation as does the state, so do counties and cities, which do not enjoy immunity. (Cal. Const., art. XIII, § 3; Rev. & Tax. Code, § 202.)

Again, on balance, the relevant criteria favor immunity.

## III

### CONCLUSION

In view of the extensive control of the state over the fiscal affairs and political status of school districts, the Ninth Circuit in *Belanger* correctly determined a California school district should be considered an arm of the state for purposes of the Eleventh Amendment. Unlike the Ohio school board involved in *Mt. Healthy*, California school districts are subject to substantially more than "some" state funding and control; in fact, as discussed, beneficial ownership of their funds and other property resides in the state, and they are agencies of the state under state law. Therefore, the District shared the state's immunity from suit under section 1983, and the trial court properly sustained the demurrer.

## IV

### DISPOSITION

The judgment is affirmed. The District shall recover costs on appeal.

Ward, J., and Gaut, J., concurred.

A petition for a rehearing was denied October 11, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 10, 2001. Brown, J., was of the opinion that the petition should be granted.