BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE TOBACCO EDUCATION AND RESEARCH OVERSIGHT
COMMITTEE has requested an opinion on the following questions:
1. Are school districts required to participate in evaluations ofthe effectiveness of tobacco use prevention programs in their schools as a condition of receiving funds pursuant to the Tobacco Tax and Health Protection Act of 1988?
2. Is the Department of Education required to withhold tobacco tax revenues from a school district that refuses to participate in the program evaluations conducted by the Department of Health Services?
 CONCLUSIONS
1. School districts are required to participate in evaluations of the effectiveness of tobacco use prevention programs in their schools as a condition of receiving funds pursuant to the Tobacco Tax and Health Protection Act of 1988.
2. The Department of Education is required to withhold tobacco tax revenues from a school district that refuses to participate in the program evaluations conducted by the Department of Health Services.
 ANALYSIS
Proposition 99, the Tobacco Tax and Health Protection Act of 1988 (Rev. Tax. Code, § 30121-30130; see Cal. Const., art. XIII B, § 12), increased the tax on cigarettes and other tobacco products, allocating the revenues to specified tobacco use prevention programs, including "[t]obacco-related school and community health education programs." (Rev. Tax. Code, § 30122, subd. (a)(1), 30125.) The two questions presented for resolution concern the Legislature's directive that evaluation surveys be conducted every two years by the Department of Health Services to determine which tobacco use prevention programs are the most effective in the public schools of the state.
Putting the Legislature's directive in its historical perspective, we note that in 1989, the Legislature implemented Proposition 99 by enacting various statutes (Stats. 1989, ch. 1331, § 1), including the Tobacco Use Prevention Act (Health Saf. Code, § 104350 — 104485; "Act").[1]
The Act serves to promote programs that prevent children and young adults from beginning to use tobacco and to encourage all persons to quit the use of tobacco. (104350, subd. (a)(9).) It requires the Department of Health Services, the Department of Education, and local agencies to work cooperatively in conducting activities directed at the prevention of tobacco use and tobacco-related diseases. (104350, subd. (b).)
Initially, the tobacco use prevention programs funded by the new tax revenues were so successful that by 1994, tobacco consumption in California was significantly reduced. As a consequence, the availability of the tax revenues for funding the prevention programs also declined. In response, the Legislature enacted additional statutes implementing Proposition 99 in order to distribute existing resources more efficiently, including requiring enhanced efforts to determine which preventive programs best contributed to a reduction in smoking and to concentrate the tax revenues in those programs.
(104500.) Among these 1995 statutory provisions, and the focus of this opinion, are subdivisions (c) and (d) of section 104375:
 "(c) The [Department of Health Services] shall produce or contract for, and update biennially, a description of programs determined to be effective in reducing smoking and tobacco use, and the identification of portions of target populations that need information regarding the hazards of tobacco use. The department, in consultation with the State Department of Education, shall conduct, or contract for an evaluation of the effectiveness of the tobacco use prevention and education program as implemented in the public schools that receive funding for tobacco use prevention education pursuant to Sections 104420, 104425, 104435, and 104445. The purpose ofthe evaluation shall be to direct the most efficient allocation of resources appropriated under this article to accomplish the maximum prevention and reduction of tobacco use. The comprehensive evaluation shall be designed to measure the extent to which programs funded pursuant to this article promote the goals identified in this article and in Proposition 99 of the November 1988 general election. All information resulting from the evaluation shall be made available to the State Department of Education for purposes of improving its ability to implement and oversee the provision of effective tobacco use prevention education programs. The evaluator shall:
 "(1) Assess the effectiveness of tobacco use prevention programs designed to prevent and reduce tobacco use among students. In support of this primary goal, the evaluation shall:
 "(A) Report findings on the effectiveness of programs and strategies currently in use in California schools that prevent and reduce tobacco use.
 "(B) Select a research strategy that will identify formal and informal factors that might account for differences in tobacco use by students, including, but not limited to, formal education prevention strategies.
 "(C) Incorporate in the evaluation quantitative as well as qualitative data. The data shall include, but are not limited to:
 "(i) Student data, including attitudes, knowledge, and behavior based upon a statistically valid random sample of school districts and students.
 "(ii) Curriculum data, including diversity of curricula, evidence of appropriateness to grade level, gender, and ethnicity, and the extent of the inclusion of prevention approaches identified in research literature.
 "(iii) School data, including intensity of emphasis on tobacco use prevention and evidence of counseling or treatment referral systems.
 "(iv) Community data, including the existence of parent networks and the participation of community service organizations including local lead agencies, in prevention.
 "(2) Develop and test a regular tobacco use prevention and education information system for use by the State Department of Education, using the resulting information to establish the extent of implementation of tobacco use prevention education programs statewide and the degree of student exposure to these programs at selected grade levels.
 "(3) Ensure provision of a fourth administration of a statewide, biennial survey of attitudes toward tobacco and prevalence of tobacco use among public school students. To the extent possible, existing survey data shall be utilized.
 "(4) Provide recommendations to the Legislature and the State Department of Education on tobacco use prevention education program changes.
 "(5) Assist the State Department of Education in identifying and developing instructional materials and curricula in school-based programs, designed to enhance the prevention of and encouraging the cessation of the continuing use of, tobacco products. The materials and curricula shall address the specific needs of persons in grades 4 to 12, inclusive, and in adult education programs.
 "(d) School districts shall agree, as a condition of receiving money pursuant to this article, to participate in the evaluation if chosen by the evaluator."
Under the provisions of the Act, it is the responsibility of the Department of Education to allocate funding to school districts and county offices of education for tobacco use prevention programs. (SS 104420-104430.) Two types of funding are distributed:
 (1) allocations in the nature of entitlements for programs directed at students in grades four through eight (104420, subds. (m), (n)), and (2) competitive grants for projects directed at students in grades nine through twelve (104425).
1. Participation in Program Evaluations
The first question presented for analysis is whether a school that receives either entitlement or grant funding from the Department of Education is required to participate in the program evaluations conducted by the Department of Health Services under the terms of section 104375, subdivision (c). We conclude that a school is required to participate in the program evaluations as a condition of receiving the tobacco tax revenues.
Our starting point is the well-recognized principle that the operation of the public schools is a matter of statewide concern. (Butt v. State ofCalfornia (1992) 4 Cal.4th 668, 680-681, 689; Calfornia Teachers Assn. v.Hayes (1992)5 Cal.App.4th 1513, 1523 — 1524.) "The Legislature's power over the public school system has been variously described as exclusive, plenary, absolute, entire, and comprehensive, subject only to constitutional constraints." (Calfornia Teachers Assn. v. Hayes, supra,
5 Cal.App.4th at p. 1524; see Butt v. State, supra, 4 Cal.4th at p. 681.) In particular, "school moneys belong to the state and the apportionment of funds to a school district does not give the district a proprietary interest in the funds." (Kirchmann v. Lake Elsinore Unfied School Dist.
(2000) 83 Cal.App.4th 1098, 1111; see Kennedy v. Miller (1893)97 Cal. 429, 435.) The state's control over local schools by imposing conditions on the appropriation of funds has long been recognized. (SeeDepartment of Finance v. Commission on State Mandates (2003) 30 Cal.4th 727,754; Butt v. State, supra, 4 Cal.4th at pp. 690-691; e.g., Ed. Code, § 404, subd. (d) [English- Language Acquisition Program]; 32228.1, subd. (a) [School Safety and Violence Prevention Act]; 44721 [Classroom Teacher Instructional Improvement Program]; 44757 [Teacher Reading Instruction Development Program]; 52123 [Class Size Reduction Program]; 52247, subd. (h) [Advanced Placement Program]; 60640, subd. (j) [Standardized Testing and Reduction Program].)
In construing the terms of section 104375, we are to ascertain the intent of the Legislature so as to effectuate the purpose of the law; to that end, the words of the statute are generally the most reliable indicator of the Legislature's intent. (See People v. Gardeley (1996)14 Cal.4th 605, 621; People v. Jenkins (1995) 10 Cal.4th 234, 246.) "If there is no ambiguity in the language of the statute, `then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] `Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' " (Lennane v. Franchise Tax Bd. (1994)9 Cal.4th 263, 268.)
Here, we have no doubt as to the Legislature's intent behind the directive for evaluation surveys in section 104375. Schools receiving tax revenues under the Act must participate in the evaluations of their programs when surveyed by the Department of Health Services. That intent appears from the plain language of section 104375, subdivision (d), which makes a school's participation in the program evaluations "a condition" of receiving the tax revenues. "Condition" denotes a prerequisite, restriction, or qualification. (See Webster's 3d New Intemat. Dict. (1993) p. 473; Black's Law Dict. (7th ed. 1999) p. 288.) In other words, unless a school district agrees to participate in the evaluations of its programs, it may not receive funds under the Act. Accountability in the use of the tax revenues is required.
With respect to the Act as a whole, it is clear that the Legislature intended to make the best use of diminishing tax revenues by evaluating tobacco prevention programs throughout the state, and directing funding to those shown to be the most effective. (104500.) To accomplish this general goal, the Legislature imposed strict standards for the evaluation surveys themselves, requiring among other things that the evaluations incorporate "quantitative as well as qualitative data," and specifically "[s]tudent data, including attitudes, knowledge, and behavior based upona statistically valid random sample of school districts and students."
(104375, subd. (c)(i)(C)(i), italics added.) It would circumvent the Legislature's directive of using a statistically valid random sample if some schools could unilaterally remove themselves from the sampling pool. We must avoid such a construction of section 104375. (See People v.Craft (1986) 41 Cal.3d 554, 561; Calfornia Mfrs. Assn. v. Public UtilitiesCom., supra, 24 Cal.3d at p. 844.) A statute is to be considered in the context of its entire statute scheme, harmonizing and giving significance to every word, phrase, sentence and part in pursuance of the legislative purpose. (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 388; see People v. Hull (1991) 1 Cal.4th 266, 272.)
Further, we see no basis for drawing a distinction between entitlement funds for grades four through eight, and competitive grant funds for grades nine through twelve. Section 10435 makes no such distinction on its face, and the Legislature's overarching purpose — to evaluate all tobacco use prevention programs in order to make the most efficient use of diminishing tax revenues — cuts equally across programs supported by both types of funding.
Similarly, we see no basis for distinguishing between schools or districts that receive one type of funding but not the other, or schools or districts that implement tobacco prevention programs in some locations or grades but not others. The types of surveys that the Legislature has required are not limited to evaluating the effectiveness of a particular program at a particular site; rather, the Legislature has directed the evaluations to be conducted in a manner that will ascertain what kinds of tobacco use prevention programs are most effective overall.
For example, it may be relevant to measure the attitudes and behaviors of students in grades nine through twelve even in districts where tobacco prevention education is provided only in grades four through eight; or to measure the attitudes and behaviors of students at all school sites within a district even though tobacco prevention programs are offered at only some sites. Non-participating grades and school sites may serve as statistical controls against which to measure the data obtained from participating grades and schools, or may help evaluators assess whether variations in data may be attributable to factors other than program content, such as time, maturity, geographic region, or socioeconomic characteristics. (See § 104375, subd. (c)(1)(B).)
Accordingly, we conclude that school districts are required to participate in evaluations of the effectiveness of tobacco use prevention programs in their schools as a condition of receiving funds pursuant to the Act.
2. Withholding of Funds
The second question presented for resolution is whether the Department of Education must withhold tax funds under the Act if a school district refuses to participate in the program evaluations conducted by the Department of Health Services. We conclude that the Department of Education is required to do so.
The Department of Education stands in a supervisory position via-a-vis local school districts, ensuring that the Legislature's mandates are carried out in the administration of the public schools. (See Ed. Code, § 33031, 33112, subd. (a), 33301-33303; Hartzell v. Connell (1984)35 Cal.3d 899, 916-917; State Bd. of Education v. Honig (1993)13 Cal.App.4th 720, 734-737; 41 Ops.Cal.Atty.Gen. 105, 111(1963); 1 Ops.Cal.Atty.Gen. 36, 38 (1943).) As we have determined in answer to the first question, the Legislature's intent in section 104375, subdivision (d), is for tobacco tax funds to be available only when the school districts agree to participate in program evaluation surveys. Permitting a school district to receive the funds but not participate in the surveys would make subdivision (d) of section 104375 a virtual nullity. We must avoid such a construction of the statute. (People v. Craft, supra,41 Cal.3d at p. 561; Calfornia Mfrs. Assn. v. Public Utilities Corn.,supra, 24 Cal.3d at p. 844.)
Moreover, it would be contrary to the state's policy for the Department of Education to allow school districts to keep their tax revenues after refusing to comply with the Legislature's mandate. Education Code section14000 provides:
 "It is the intent of the Legislature that the administration of the laws governing the financial support of the public school system in this state be conducted within the purview of the following principles and policies:
 "The system of public school support should make provision for the apportionment of state funds to local districts on a strictly objective basis that can be computed as well by the local districts as by the state. The principle of local responsibility requires that the granting of discretionary powers to state officials over the distribution of state aid and the granting to these officials of the power to impose undue restriction on the use of funds and the conduct of educational programs at the local level be avoided.
In light of this legislative declaration of the state's policies, it is apparent that section 104375, subdivision (d), grants no discretion to the Department of Education to waive the requirement that school districts must participate in the program evaluations if they receive the tax revenues.
We conclude that the Department ofEducation is required to withhold tobacco tax revenues from a school district that refuses to participate in the program evaluation surveys conducted by the Department of Health Services.
[1] All further references to the Health and Safety Code are by section number only. In 1995, the statutes relevant here were reorganized and renumbered without substantive effect. (Stats. 1995, ch. 415, § 171.) Sections 104350-14485 were formerly sections 24160-24169.7.